SAMUEL McCOMB et ux. *vs.* A. S. GILKEY.

The powers of the legislature are much more ample than those appertaining to the courts; for they are both creative and administrative, and are not confined in their exercise to the rules applicable to tribunals merely judicial. Upon proper representation and due proof, made to the satisfaction of the legislature, that it was necessary to the interest of the heirs that the land in controversy should be sold ; it was as fully within their power to authorize the sale to be made by a guardian to be thereafter appointed by the court having the general power to make the appointment, as by one already appointed.

The substantial thing to be done in such case was to authorize the sale, and that power might be granted by the legislature to any one, even to the infants themselves. The guardian was clearly the most proper person to exercise it; and if there was no guardian, it was altogether proper and competent for the legislature to provide that the power should be exercised by such person when he should be appointed by the court to which appointments are generally committed. *Williamson* v. *Williamson*, 3 S. & M. 715, cited and confirmed.

The power conferred by the act of the legislature, was to sell three lots of land in the town of Port Gibson, and the guardian did sell three lots in said town, which act would come within the words of the power, if it did not appear that the heirs owned any other lots in the town of Port Gibson than those sold ; for it would be rendered certain by location. But there were more than three lots belonging to the heirs in that town ; and the act conferred the

McComb et ux. *v.* Gilkey.

right upon the guardian to elect which three of the lots in the town of Port Gibson he would sell, otherwise its object would have been defeated.

The order of the court was not void for not specifying what three lots were to be sold, but properly confined itself to what it was required to do by the act, and notice to the heirs was not necessary in the probate court.

Neither the statute conferring the power to sell, nor the order of the court carrying it out, specifies any manner of making the sale; and that seems to have been left to the discretion of the guardian under the sanction of the court. The sale cannot be brought within the general laws regulating sales, otherwise the act would have stated it.

It is competent to show that a deed was executed on a different date from that stated in it, and on which it was acknowledged.

In order to create an estoppel by recital in a deed, the matter must be directly and precisely alleged, and with certainty to every intent.

The introduction of the note as tending to show that the deed was drawn up anterior to the day it bore date, and with reference to the date at which the sale was actually made, was clearly competent evidence. The mortgage was also competent evidence, as being a written declaration, or entry, made by a person since deceased against his interest:—*Held*, that upon a construction of the whole case, the judgment of the court was correct.

In error from the circuit court of Claiborne county; Hon. Stanhope Posey, judge.

This was an action of ejectment, to recover possession of a lot in the town of Port Gibson, described lot 6, in square 9:

On the trial the lessors of the plaintiff offered in evidence the deposition of Elizabeth Coursey, who testified that she was the widow of Elijah Bland, deceased, to whom she was duly married in 1809; that Elijah Bland died in 1820, in Port Gibson.

That there were three children, the issue of the marriage, namely, Richard J. Bland, Sarah Ann, and Susan Bland, who were all alive when their father died.

That Richard died in 1840; Sarah Ann was married in 1829 to John B. Clark. Both are now dead, and their children died in infancy. Susan is still living; she having been married in 1835 to Goldborough B. Flowers; after whose death she became the wife of Samuel McComb, and she and Samuel McComb are the plaintiffs in this suit.

That to the best of her knowledge, the lot in controversy was in the possession of Elijah Bland when she came to Claiborne county, in 1811. She does not know of whom he

got it, but it was in his possession at his death, during all which time he claimed to be the absolute owner of it.

A writing signed by the counsel of the defendant was also read, admitting that Elijah Bland was in possession of the lot in controversy at the time of his death, and that Mrs. McComb was his sole surviving heir at law, and that she had intermarried with G. B. Flowers and Samuel McComb.

Plaintiff then proved by James A. Gage that he knew the lot in controversy, which is called and known as lot 6, in square No. 9, in the original town of Port Gibson; and is the lot back of the Washington Hall Tavern, and on which the stable of said tavern stands.

On cross-examination, said Gage stated, that in 1839, Samuel Walker was in possession of the property; that Joseph Nicolls had previously been in possession, and that William T. Purnell succeeded Walker in the possession; that Walker, Nicolls, and Purnell all claimed title to the property; that Richard J. Bland lived in Port Gibson, and for several years prior to his death, in 1840, was sheriff of the county; and that witness never knew of Richard J. Bland making claim of title to said property.

It was admitted that the defendant, Gilkey, was in possession of the lot at the commencement of the suit.

The plaintiffs then rested their case.

The defendant then offered in evidence the 2d, 3d, and 5th sections of an act of the legislature of Mississippi, approved Nov. 28, 1821, entitled "An Act to authorize the guardians of the infant children of Armstrong Ellis, Elijah Bland, and Francis Nailor, to sell real estate," as follows, namely : —

"Section 2. And be it further enacted, that the guardian or guardians now appointed, or hereafter to be appointed, of the infant children of Elijah Bland, deceased, be, and they are hereby authorized to sell, under such rules and restrictions as the orphans' court of said county of Claiborne shall prescribe, three lots of land in said town of Port Gibson.

"Section 3. And be it further enacted, that the said guardian, or guardians, of said infant children of the said Ellis and the said Bland be, and they are hereby vested with full power

to execute title or titles, in fee-simple, to the purchaser or purchasers of said land and lot or lots.

" Section 5. And be it further enacted, that the guardian, or guardians, of the said infant children of the said Bland, shall before selling said lots, enter into bond with good security, payable to the judge of the orphans' court of the county of Claiborne, and his successors in office, in such sum as the said judge shall direct, conditioned that the said guardian, or guardians, will apply the proceeds arising from said sale, to the payment of the debts of the said Bland, so far as it shall be necessary, and that if any part of the said proceeds remains after the payment of the said debts, the same shall be vested in such property for the said heirs as the said judge shall direct."

To the admission of which sections as evidence, plaintiffs objected, on the ground that they contained no description or designation of the lots authorized to be sold, and therefore conferred no authority to sell. Which objection was overruled.

Defendant then read in evidence an order of the orphans' court of Claiborne county, made January 22, 1827, appointing John Coursey guardian of the infant children of Elijah Bland, and also the bond of the guardian, in the penalty of eight thousand dollars, with sureties and conditioned as the law directs.

The defendant then offered and read in evidence the following order of the orphans' court, made 22d January, 1827.

" *Richard J. Bland et al. Wards.* In pursuance of an act of the legislature, passed on the 28th day of November, 1821, and on application of John Coursey, guardian of Richard, Sarah, and Susan Bland, infant children and heirs of Elijah Bland, deceased,— Ordered, that John Coursey sell the three lots in Port Gibson, in the said act named, on a credit of one, two, and three years, provided that he dispose of the same for a sum not less than $8,000, the proceeds to be appropriated to the payment of the debts of Elijah Bland, deceased, as far as necessary, and that the remainder thereof be laid out in healthy young negroes for the use and benefit of said wards, of their own right and title. He, the said John Coursey, giving bond in the penalty of $10,000, with George Lake and James S. Douglass as sureties, to be conditioned as said act directs. And it is further

ordered, that said bond may be executed iu the Register's office in vacation."

To the admission of which order plaintiffs objected, because no notice was given to the infant children of E. Bland, or process served on them, or opportunity given them to be heard; and because the order did not ascertain or specify the lots to be sold.    But the objections were overruled and the evidence admitted.

The defendant then offered and read in evidence the bond executed by Coursey, the guardian, in pursuance of said order, dated January 25, 1827, in the penalty of $10,000, with Lake and Douglass as sureties, with the following condition: " The condition of the above obligation is such, that whereas the legislature of the State of Mississippi did, by a special act passed the 28th day of November, A. D. 1821, authorize the guardian, or guardians, of the infant children of Elijah Bland, deceased, late of Port Gibson, in Claiborne county, to sell under such rules as the orphans' court of said county should prescribe, three lots of land iu the town of Port Gibson.    Now, if the above-named John Coursey, guardian of the infant children of Elijah Bland, deceased, does well and truly apply the proceeds of the sale of the above lots, (which sale he is hereby authorized to make,) to the payment of the debts of said Bland, so far as is necessary, and the remainder of the proceeds of said sale, (which is not to be made for a less sum than $8,000,) he does well and truly and to the best advantage, lay out in the purchase of healthy young negroes, for the use and benefit of said wards, of their own right and title, and well and truly account to the court his actings and doings herein when thereto required, then this obligation to be void, otherwise to remain in full force and virtue."

The defendant then offered in evidence the following deed from John Coursey and Elizabeth his wife, to Edward Cronly:—

" This indenture, made and entered into this thirtieth day of April, in the year of our Lord one thousand eight hundred and twenty-seven, between John Coursey, guardian of the persons and property of Richard, Sarah, and Susan Bland, infant children and heirs of Elijah Bland, deceased, and Elizabeth

Coursey, the wife of the said John Coursey, of the first part, and Edward Cronly of the second part, all of the county of Claiborne, and State of Mississippi, witnesseth : That whereas the said Elizabeth, as widow of the said Elijah Bland, deceased, was and is entitled to dower, in the premises hereinafter mentioned ; and has, since the death of the said Elijah Bland, intermarried with the said John Coursey, whereby the said John Coursey has also acquired an interest in the said premises. And whereas, by an act of the legislature of the State aforesaid, passed on the 28th day of November, 1821, the guardian of the infant children of the said Elijah Bland, deceased, is authorized to sell three lots of land in the town of Port Gibson, the property of the said children, under such rules as the orphans' court of said county of Claiborne might prescribe, and to execute titles in fee-simple to the purchasers of said lots. And whereas, at the January term, 1827, of said orphans' court, the said John Coursey, guardian as aforesaid, was, by an order thereof, directed to sell the said lots of land, under the rules in said order of sale contained. This indenture, therefore, witnesseth, that the said John Coursey and Elizabeth his wife, for and in consideration of the sum of $8,000, to be paid to John Coursey, in three equal annual instalments, commencing from the 12th day of instant, that is to say, $2,666.66, on the 12th day of February, 1828; $2,666.66, on the 12th day of February, 1829, and $2,666.66, on the 12th day of February, 1830, have granted, bargained, &c., to the said Edward Cronly, his heirs, &c., all the right, title, claim, interest, and estate which they, the said John Coursey and Elizabeth his wife, and the minor heirs of Elizabeth Bland, deceased, have as aforesaid, or in any other manner in and to three lots of land or ground situate, &c., in the original survey of the town of Port Gibson, in the county of Claiborne, aforesaid, and known in the plan or plot of said original survey, as lots numbers one and three, in square four, and lot six, in square number nine, &c. And the said John Coursey, as guardian of the infant children and heirs of Elijah Bland, deceased, in pursuance and by virtue of the authority in him vested, by said act of the legislature and said order of the orphans' court of the said county, doth bargain, &c., to said Edward Cronly, his heirs, &c., all the right, title, claim,

interest, and estate, which the said heirs of Elijah Bland, deceased, have and possess in and to the said three lots of land or ground; to have and to hold, &c., with a covenant of general warranty by Coursey and wife, and Coursey as guardian. In witness of which, said John Coursey and wife, for themselves, and Coursey as guardian, have hereunto set their hands and seals, the day and year first herein written."

The deed was acknowledged before Peter A. Vandorn, judge of probate, on the 30th of April, 1827, and recorded July 10, 1827.

The plaintiffs objected to the admission of this deed in evidence because it was made upon a private and not a public sale; and because it appeared from the deed that the property was not sold on a credit of one, two, and three years from the day of sale; and because the interest of the heirs was not sold for eight thousand dollars.

The court admitted the deed in evidence, in connection with the evidence subsequently offered by defendant, to show, either that the deed was erroneously dated, or that the sale was made on the 12th February, 1827.

The evidence offered in connection with the deed was:—

1st. The testimony of David McDougall, that the deed was in the handwriting of William Davis, except the words " thirtieth" and " April" in the date, which are in the handwriting of Peter A. Vandorn, and that Davis was dead.

It was admitted that Edward Cronly was dead.

2d.  The following bill was offered in evidence:—

" Dolls. 2,666.66.          Port Gibson, Feb. 12, 1827.

" On or before the 12th day of February, 1830, we, or either of us, promise to pay John Coursey, guardian of the infant heirs of Elijah Bland, deceased, two thousand six hundred and sixty-six dollars and sixty-six cents, for value received.

|  |  |
|---|---|
| " Witness, | " EDWARD CRONLY, [Seal.] |
| | " LOUIS CRONLY,   [Seal.] |
| JOHN M. MAURY." | " FIELDER OFFUTT, [Seal.] " |

This instrument was proved to have been found in the files of Claiborne circuit court, among the papers, in a suit brought

thereon by the payee against the makers. Proof of the execution of the bill single was dispensed with. The plaintiff objected to the admission of the bill single in evidence, because it was *res inter alios*, and irrelevant and incompetent to prove any fact in the cause. But the objection was overruled.

3d. The defendant offered in evidence a certified copy from the record of a mortgage, dated 12th February, 1827, made by Edward Cronly and his wife to Louis Cronly and Fielder Offutt; and which conveyed the lots one and three, in square four, and lot six in square nine, (which are the same described in Coursey's deed to Edward Cronly,) with a covenant of general warranty.

The condition of the mortgage is as follows :—

" Provided, and the condition of the above indenture of bargain and sale is this : That whereas the said Edward Cronly has executed and delivered to John Coursey, guardian of the infant heirs of Elijah Bland, deceased, his three certain bills single, or writings obligatory, each for the sum of $2,666.66, bearing date 12th day of February, 1827, and payable, one of them on the 12th day of February, 1828, the second on the 12th day of February, 1829, and the third on the 12th day of February, 1830; in which bills single, or writings obligatory, the said Louis Cronly and Fielder Offutt, are also bound to the said Coursey as co-obligors and security for the said Edward Cronly.

" Now if the said Edward, as the said bills single, or writings obligatory, shall become due and payable, will, well and truly pay, &c., the same, and will indemnify, &c., the said Louis Cronly and Fielder Offutt, &c., then the above indenture to be void, else to be, &c.

" In testimony of all of which, the said Edward Cronly has hereunto set his hand and affixed his seal, this the day and year first above written.

" EDWARD CRONLY, [Seal.]<br>
" BARTHENA CRONLY. [Seal.] "

This mortgage was acknowledged on the 16th day of May, 1827, and filed for record March 6th, 1829.

Plaintiff objected to the admission of this mortgage as *res*

*inter alios acta,* and irrelevant and incompetent to prove any fact in the cause.   But the objection was overruled.

4th.   Defendant proved by the clerk of the probate court of Claiborne county that he had diligently examined the records of the court, and could find no order authorizing John Coursey as guardian of the heirs of Elijah Bland, to sell any property, except the order made 22d day of January, A. D. 1827.

The plaintiffs then offered in evidence an inventory of the property of his wards, returned by John Coursey, guardian, to the probate court, and sworn to on the 7th day of February, 1829.

He returns slaves and other property, amongst which is a negro bought in February, 1829, showing that the report was not made until 1829.

He reported as follows : " The proceeds of the sale of a house and three lots, in Port Gibson to Louis Cronly, consisting of a tavern, stables, and other buildings, for the sum of eight thousand dollars ; sold agreeable to the order of .court, on a credit of one, two, and three years, the purchaser giving his notes and Fielder Offutt security, payable in the sum of $2,666.66 each, the 10th of February, due in the years 1828, 1829, and 1830.

"$2,666.66,   $2,666.66,   $2,666.66."

He also reported a tract of land containing 540 acres, and two lots lying on Farmer street, in Port Gibson.   At the foot of the inventory he states : " That his wife and wards are joint owners of the above property, of which there has been no division ; of the personal property, except the proceeds of the sale of the tavern, the guardian in right of his wife, is entitled to one fourth ; he therefore returns three fourths of said property as the estate of his wards, and two thirds of the land property, and two thirds of the notes arising from the sale of the tavern and lots.   To one third of which real estate, Mrs. Coursey was entitled in right of dower, and by consequence she is entitled to one third of the proceeds of the sale of the tavern and lots. The balance thereof belongs to wards."

Defendant then read an order of the probate court, that said report should be received and recorded.

McComb et ux. *v.* Gilkey.

This was all the evidence in the cause.

For the plaintiff the court gave the jury the following instructions : —

1st. If the jury believe from the evidence, that Elijah Bland was in possession of the property in controversy in 1811, and continued in possession of it until and at the time of his death, in 1820, claiming to be the owner thereof, such possession is good and sufficient *primâ facie* evidence of the title of said Elijah Bland to the property in fee simple, and if the jury believe, from the evidence, that Susan McComb, the female lessor of the plaintiffs, is the sole heir of said Elijah, then they should find for the plaintiffs, unless the title of the plaintiffs has been divested in a legal manner.

2d. If the jury believe from the evidence, that both parties claim under the title of Elijah Bland, it is not necessary to make any other proof of such title in this case, but the same is admitted.

4th. If the jury believe from the evidence, that the interest of the children of Elijah Bland in the property sold by John Coursey to Edward Cronly, under color of said order of sale, was sold for less than eight thousand dollars, and that the dower interest of the widow of Elijah Bland in said property was sold, together with the interest of said children, and valued at one third of the whole, and that the interest of said children was sold for the sum of $5,333.33, or any other sum less than eight thousand dollars, then such sale was and is void.

5th. Unless the jury believe from the evidence, that the said sale was made by Coursey to Cronly, on a credit of one, two, and three years from the day of sale, such sale was and is void.

6th. That the report of said sale made to the probate court by Coursey, as guardian, is a matter to which Cronly, the purchaser, was privy; and that the said report is evidence of the terms of the sale against Cronly and those claiming under him, so far as they show a failure to comply with the restrictions of the order of sale.

7th. That no estate in land for a longer time than one year, can be conveyed, except by deed sealed and delivered; nor is any contract for the sale of land, or a lease, for a longer term

than one year, valid, unless such contract is in writing, and signed by the party to be charged therewith.

8th. That an adverse possession held under the sale made by Coursey to Cronly, is no bar to the right of the plaintiffs in this suit, unless Susan McComb was twenty-one years of age twenty years before this suit was commenced.

12th. That the bond given by Coursey, with Lake and Douglass as sureties, does not operate to cure any defects in the sale, but the wards of said Coursey have a right to recover back the property, if the sale was illegally made.

The court refused to give the following instructions asked for plaintiffs : —

3d. That the order of sale made at the January term, 1827, of the Probate Court of Claiborne county, read in evidence by defendant, is void, and conferred no authority to make any sale of the property in controversy, because said order does not ascertain, describe, or specify what lots of property were intended to be sold, but is uncertain in that respect.

9th. That the act of the legislature, approved November 28, 1821, read in evidence by defendant, entitled " An Act to authorize the guardian of the infant children of Armstrong Ellis, Elijah Bland, and Francis Nailor, to sell real estate," confers no authority to make any sale of the property of the children of Elijah Bland, and is void for that purpose, because it does not ascertain or specify what property is intended to be sold.

10th. That the order of sale made at the January term, 1827, of the probate court of Claiborne county, is void, and conferred no authority to make a sale, for want of proof of the legal notice thereof to the parties whose property is ordered to be sold.

11th. If the jury believe from the evidence, that the sale of the property in controversy, by John Coursey to Cronly, was a private sale, and not a public sale to the highest bidder, such sale is void.

The following charges were given for defendant : —

1st. The act of the legislature passed in 1821, was sufficient to authorize the guardian, Coursey, to sell at discretion three

McComb et ux. *v.* Gilkey.

lots in Port Gibson, the property of his wards, under rules and restrictions to be prescribed by the orphans' court.

2d. If the jury believe from the evidence, that the orphans' court, as the act directed, did prescribe rules and restrictions under which the sale should be made, and that the guardian gave bond, as the statute required, and made sale of three lots, — one being that in controversy, — in conformity with the rules and restrictions imposed by the court, such sale was valid.

3d. If the jury believe from the evidence, that John Coursey, the guardian, and Edward Cronly, entered into the contract of sale on the 12th day of February, 1827, and that Cronly gave his notes for the purchase-money, payable in one, two, and three years from that day, the rule of the court as to the credit to be given, was sufficiently complied with if the deed was not executed until the 30th April, afterwards.

4th. The jury are not concluded by the date in the face of the deed of Coursey to Cronly, but if the evidence be sufficient, are authorized to find that the deed was made on a different day from that written.

5th. The fact that Mrs. Coursey joined in the deed, conveying any interest she may have had, did not vitiate the sale, if the guardian sold the lots for eight thousand dollars.

6th. It was not necessary that notice should have been given to the heirs, or that the sale should have been a public one, neither having been prescribed by the statute or directed by the court.

7th. If John Coursey sold the three lots in his deed to Cronly described, for eight thousand dollars, and took the purchaser's notes for the purchase-money, payable to himself as guardian, any misapplication made by him of the proceeds of the sale could not affect Cronly's title.

8th. If the sale was made for eight thousand dollars, on a credit of one, two, and three years, the fact that two thirds of a cent, resulting from a division of the sum into three equal parts, were not included in the purchaser's notes, did not vitiate the sale.

9th. That the plaintiff must recover (if he recovers at all), upon the strength of his own title, and not upon the weakness

of that of the defendant, for whose possession alone is a good title, in the absence of a legal title, being shown in the plaintiffs.

10th. That if the jury believe from the evidence, that the plaintiffs have failed to show a legal title in themselves, they cannot recover of the defendant in possession, though said defendant should have no other title than the possession. That possession in a defendant is a sufficient title against a plaintiff who has failed to show a legal title in himself to the lot in controversy.

11th. That if the jury believe from the evidence, that the legal title to the land in controversy is outstanding in another person or persons than the plaintiffs, they will find for the defendant.

The jury returned a verdict for the defendant, and the plaintiffs moved the court for a new trial:

1st. Because the court erred in excluding evidence offered by plaintiffs.

2d. Because the court erred in admitting testimony in behalf of defendant, which was objected to by plaintiffs.

3d. Because the court erred in giving the instructions asked by defendant.

4th. Because the court erred in refusing to give instructions asked by the plaintiffs.

5th. Because the verdict of the jury was contrary to the law as laid down by the court, and against the evidence in the cause.

The jury found a verdict for the defendant Gilkey, and the plaintiffs prayed a writ of error to this court.

*A. T. Ellett*, for appellant.

There are many reasons why the court below ought to have granted a new trial.

I. It was error for the court to instruct the jury that the act of the legislature, passed Nov. 28, 1821, was sufficient to authorize the guardian, Coursey, to sell at discretion, three lots in Port Gibson, the property of his wards; and it was error to

McComb et ux. *v.* Gilkey.

refuse the ninth instruction asked by the plaintiff, namely, that the said act is void for uncertainty.

It is shown by the record, that Elijah Bland died in 1820, when the female lessor of the plaintiff was about nine months old. In 1821 this act was passed, authorizing a guardian, thereafter to be appointed, to sell property. The step-father procured himself to be appointed guardian on the 22d January, 1827, obtained the order of the orphans' court on the same day, gave bond on the 25th of the same month, and was never heard of again in the orphans' court, except to make one report in 1829.

No case of the kind is to be found among those which have sustained the validity of these private acts for the ruin of the estates of infants. As a grant, this act was void, for there was no grantee to take ; as a power, it was equally void, for there was no person to execute it. If minors having no guardian, and no estate under the care of the law, can be made the objects of this species of legislation, then why cannot the legislature appoint an agent to sell the property of an adult against his will? And if a person, to come into existence six years afterwards, can be authorized to do such an act, then there is no limit to the time for the execution of such a power. Such laws are usually, as in this instance, the mere instruments to defraud the helpless, and should be regarded with disfavor. There must at least be an estate in court, and a person having the lawful custody of that estate, upon whom the power may be conferred, otherwise there is no principle upon which such acts of legislation can be supported. These infants had no guardian, and no estate in court. It does not even appear that there was an administrator on their father's estate, and there probably was none, for this act directs the guardian to pay the debts of the deceased, if there were any. Coursey was not even the step-father of the children until long after the act was passed. The instruction that this act was sufficient to authorize the sale, was therefore erroneous.

The act was also void for the reason specified in the plaintiff's ninth instruction, because it does not ascertain or specify the property to be sold.

McComb et ux. *v.* Gilkey.

The act is general, authorizing the guardian to sell "three lots of land in the town of Port Gibson." The words "guardian or guardians, now appointed, or hereafter to be appointed, of the infant children of Elijah Bland, deceased," are a description and designation of the person or persons who are to execute the power — to do the act. The power to be executed, the act to be done, is the sale of "three lots of land in the town of Port Gibson." Not three lots belonging to said infants, but "three lots," without restriction, without any designation or description whatever. The authority is just as good to sell the lots of any other person, as those belonging to these children.

But confine the power, by construction, to the lots belonging to the infants, and it is still so uncertain as to be utterly void.

It is certainly safe to assume that an act of legislation purporting to grant land, or to authorize it to be granted, must be governed by the rules of construction that apply to deeds. There must be certainty as to the thing granted.

"There must be sufficient certainty in the description of the land to point to its locality, and distinguish it from other land." *Holley* v. *Curtis*, 3 How. (Miss.) 234.

See also on this point, 2 Black. Com. 296, 298; 1 Shep. Touch. 52, 55, 56; 5 Dess. Eq. R. 215; 4 Mass. 205; Co. Litt. 240, 195 (b. a.) ; 2 Har. & Johns. 498; 6 Peters, 345.

Now, the question is, What lots did the legislature intend? It is not all the lots owned by the infants, nor any three lots to be selected by the guardian, but it is three certain lots that were in the legislative mind. There must be a description by words, or by reference to something extrinsic, that will show with sufficient certainty what was intended. If a sale of all the property owned by the wards in the town were authorized, that would be sufficient, for it would refer to the title papers to ascertain what property was covered by the description. A deed conveying "a lot of land in Port Gibson," without any further description, and without any reference, direct or indirect, to any source for information, would surely be void. It is precisely what is called in the books a patent ambiguity, and it cannot be helped by averment.

But, if it could be helped by averment, from whom must the

averment come? Certainly from the party claiming under it. It is a question of intention, and if there is any ambiguity in the act that can be aided by proof, it is for the defendant to show that the lots he claims were the ones intended by the legislature to be sold. No such proof is offered, but we are gravely told that it is for us to prove that these are not the lots that were intended.

We deny that a deed (and we are considering the act of the legislature as a deed) conveying "a lot of land in Port Gibson," without further description, can be made effective to pass a particular lot, by proof that the grantor owned that lot, and that he owned no other. For the deed must contain a sufficient description of the property, otherwise it is void on account of the patent ambiguity. What becomes of the whole doctrine of patent ambiguities, if, where the deed contains no description, the deficiency may be supplied by proof? It would "make all deeds hollow, and subject to averments, and so in effect, that to pass without deed, which the law appointeth, shall not pass but by deed." 1 Phil. Ev. 538; 1 Greenleaf, Ev. § 297.

Not only is there no proof that these children owned no other lots in the town, but it plainly appears that they did own two other lots. It was the duty of the guardian to report to the orphans' court what property his wards owned. It was also his duty to report the sale to the court. He embodied both in one report, and in this report he shows that his wards owned two other lots in Port Gibson, besides a tract of land and some personal property.

Latent ambiguities, being created by averment, may be removed in like manner. Thus, where there is a sufficient description of the person or thing, and it is shown by proof that there are two persons or things that equally answer the description, as the ambiguity is raised by the extrinsic proof, it may be shown by like proof which person or thing was intended. But this presupposes that there is no ambiguity on the face of the instrument. There must be a sufficient description, otherwise there cannot be two or more things or persons described.

If the present were a case of latent ambiguity, where is the

14*

proof that the legislature intended the three particular lots that were sold ?

But it is argued that the act gives the guardian an election to sell any three lots at his discretion, and so the court charged the jury.

We deny this. The act does not say so. There is no language in it that purports to give an election. Nor can it be supposed that the legislature had indifferent intentions in regard to which should be sold. There must have been reasons upon which the legislature acted. Those reasons either applied to all the lots, or only to particular lots. If they applied to all, then all would have been included in the act. It appears that on one of the lots sold, there was a tavern; others were probably unimproved. They must have been of different values, and they appear to be on different squares, and in different parts of the town. It is absurd to suppose that the legislature thought that two lots, without regard to value, improvements, or fitness for profitable use, were enough for the three wards to own, and therefore ordered any three, at the election of the guardian, to be sold off. As a question of intention, the idea of an election being conferred cannot be supported.

But it is said the legal effect of what has been done is to give an election.

We deny this proposition also. We deny that if a man grants " three lots of land in the town of Port Gibson," when he owns five, the grantee has an election to take whichever three he chooses. The court could not say it was indifferent to the grantor which were selected, for the values would necessarily be different; and such a conveyance would be void for the ambiguity. It may be that, in some cases, where a part is granted out of a whole, and is granted by quantity merely, without further description, the grantee may elect what part he will take, for each part being of the same relative value to the whole, it may be presumed that the grantor was indifferent. And this rule can only apply where the ambiguity is latent.

So the rule of evidence that parol proof may be received, to apply the description contained in a deed to its appropriate subject-matter, always presupposes that there is a sufficient descrip-

tion.    As if a man grants his manor of Dale, or negro named S——, proof may be given to show what manor was called Dale, or what negro was named S——.

In *Richardson* v. *Watson*, 4 Barn. & Adol. 787, (24 Eng. Com. L. Rep. 164,) the devise was of " the close in Kirton now in the occupation of John Watson." It appeared there were two closes in Kirton in the occupation of John Watson, and the proof failed to show which one of the two the testator intended to devise.    The devise was held void for the ambiguity.    Lord Denman says : " This is not a case of election ; for an election can take place only where the intention of the devisor or grantor is clear that, out of a mass, a certain portion should be selected."    Littledale, J., says : " This is not a case of election, because it does not appear, from the context of the will, that the testator intended that the devisee should have an election.    In the case put in Co. Litt. 145 a., where a gift is made of one of the donor's horses in his stable, it is manifest that the donor intends that the donee should select.    So in the case put in Bacon's Maxims, of the grant of ten acres of wood, in a place where the grantor has one hundred."    Parke, J., says : " The devisee clearly had no election here ; that exists only where, on the natural construction of the instrument, there is a clear intent in the testator or grantor that there shall be an election in the devisee or grantee, as in the instances put in Bacon's Maxims, the reason of, which is there given."

This case is strongly in point, in both of its aspects, showing that by a grant of one of two things, nothing passes unless there is clear proof which was intended to pass ; and that in such case there is no election, unless it clearly appears that there was an actual intention to give such election.

II.    The order of sale made by the probate court, on the 22d January, 1827, was void : —

1st.    Because it does not ascertain what property it applied to.

The statute authorized the sale to be made " under such rules, and restrictions as the orphans' court of said county of Claiborne shall prescribe."

The property must be sold in strict compliance with the law. *Williamson* v. *Williamson*, 3 S. & M. 747.

No rules being prescribed with special reference to these lots, the order was void, and the sale was void.   And the court erred in refusing the plaintiff's third instruction, and in giving the defendant's second.

2d.  The order was void, also, because notice was not given to the infants.

It is a constitutional provision in this State, that no person can be deprived of his life, liberty, or property, but by due course of law.   Dec. of Rights, sect. 10.

No person can be bound by judicial proceedings of which he had no notice.   5 How. 43–740; 1 Starkie, 214, 215; 6 How. 114; 5 S. & M. 129–604; 2 Starkie, 979.

This is a universal principle in all civilized countries; courts must have jurisdiction of the cause, and of the parties, or no judgment can be given to affect their interests.   Probate proceedings for the sale of land, are not recognized in this State as proceedings *in rem*, and no jurisdiction can be acquired over parties in interest, except by process or publication, as pointed out by law.

The only answer that can be given is, that the statute in this case does not expressly require notice to be given.

But that is no answer.   The principle is universal, and applies whenever a court is established.   Here a special jurisdiction was conferred upon the court, to fix and determine the time and manner in which these parties should be deprived of their property.   In all respects in which the statute is silent, the jurisdiction must be exercised as in other analogous cases, and according to the fundamental principles of justice.

The cases of *Wilkinson* v. *Leland,* 2 Peters, 628; *Watkins* v. *Holman,* 16 Peters, 25; *Rice* v. *Parkman,* 16 Mass. 326, and *Williamson* v. *Williamson,* 3 S. & M. 715, were all cases where the sale was immediately authorized by the legislature, without any intermediate judicial proceedings.   In the first three cases, the point is suggested whether notice of the application to the legislature for the passage of the law, is not necessary, and though the point was overruled, it was deemed worthy of grave consideration.   The constitutionality of the laws seems to be sustained mainly on the idea that the land goes to the heir or

devisee, subject to a lien in favor of creditors, and that it does not divest the rights of the heir or devisee, to aid in a summary enforcement of such lien.

It is also said in these cases, that the courts in Massachusetts, Rhode Island, Ohio, and some other States, have always made orders for the sale of real estate of decedents and infants, without notice to the parties interested, and that titles would be endangered if such sales were not supported.

We admit that, if the legislature could constitutionally pass such an act as this at all, notice to the heirs before its passage was not necessary. The rule requiring notice, applies only to judicial proceedings, and it is only on the question of the validity of the order of the court, that we invoke its protection.

No usage exists in this State, to make such orders, without notice to the parties. No idea has ever prevailed here, that rights of property may be divested under decrees of courts, rendered without an opportunity to those interested to be heard. And it is not put merely on the ground that the statute prescribes a particular mode of bringing the parties into court; but upon the higher ground that a different rule " stands opposed to the very first principles of justice." No man can be condemned to lose his life, liberty, or property, by a judgment or decree, who has no notice of the proceedings against him, and, consequently, no opportunity to contest it. *Campbell* v. *Brown*, 6 How. 114; *Gwin* v. *McCarroll*, 1 S. & M. 368.

Infants constitute no exception to the rule.

There could have been no rule here, without the previous order of the court; and that order was a judicial proceeding, which could only be had after the court had acquired jurisdiction of the cause, and of the parties in interest, in the usual manner. It is not like the cases where nothing was to be done in the court but to give a bond. Here discretion was to be exercised, on facts shown, and a decree to be rendered.

It is submitted that the tenth instruction asked by the plaintiffs, ought to have been given.

III. The eleventh instruction asked by plaintiffs, ought to have been given, namely, that if the sale was a private, and not a public sale, to the highest bidder, it was void.

McComb et ux. *v.* Gilkey.

The whole policy of our law is opposed to private sales of property, by persons occupying a fiduciary character. Private sales of property under the order of the probate court, are void. 1 How. 558; 1 S. & M. 208.

In every case in which a sale is provided for by the general law, it is required to be public. Hutch. Code, 667, sect. 100; 669, sect. 109; 667, sect. 1; 505, sect. 132.

This special act is silent on the subject, and it may be argued that a discretion in this respect was delegated to the orphans' court. That court did not expressly exercise the discretion thus bestowed, but a fair construction of the order would require the sale to be public. It authorizes the sale on a stated credit, "for a sum not less than $8,000." It evidently contemplates competition, and fixes only the minimum price. Knowing the law and policy on the subject, the court seems to have taken for granted that the mode of sale was fixed, and that no rule or restriction in that respect was necessary.

The act being considered silent, what would be the rule? Election, again? or, is the general law of the State to be observed, where no new rule is introduced by the special act? It would seem clear that the mode of conducting the sale should have been in accordance with the general law, except as may have been otherwise provided, and the mere failure expressly to require a public sale, ought not to be construed as authorizing a private sale.

The defendant's sixth instruction, stating the reverse of this proposition, is erroneous, and ought not to have been given.

IV. The court erred in giving the defendant's eleventh instruction, namely, that if the jury believe from the evidence, that the legal title to the land in controversy is outstanding in another person than the plaintiffs, they will find for the defendant.

There was no proof or pretence of an outstanding title, and the only effect of this charge was to embarrass and perplex the jury, to the disadvantage of the plaintiffs.

V. The act of the legislature, the order of the court, and the deed from Coursey and wife to Cronly, were all incompetent

McComb et ux. *v.* Gilkey.

evidence for the reasons already given, and they were improperly admitted to go to the jury.

The deed was obnoxious to the further objection, that it showed on its face a non-compliance with the terms of the order of sale, in two respects, namely, the amount of the purchase-money and the time of the credit. These points will be noticed more fully hereafter.

VI. The bill single of Edward Cronly and others, to John Coursey, dated February 12, 1827, for $2,666.66, due 12th of February, 1830, and the mortgage of Cronly and wife to L. Cronly and F. Offutt, dated February 12, 1827, and acknowledged May 16, 1827, were improperly admitted in evidence.

The deed of Coursey and wife to Cronly is dated and acknowledged on the 30th of April, 1827. The note and mortgage were offered to prove that the date of the deed was erroneous, and that it was in fact made on the 12th of February, 1827; or that the sale was then made, and the deed executed afterwards.

The question was in regard to the date of the deed, or the time of the sale. The note was no proof that the deed bore a false date. If they were given on the same transaction, the deed is just as potent proof that the date of the note is wrong. The note did not conduce to prove a false date of the deed, and therefore was inadmissible. Regarded as Cronly's statement, it was clearly inadmissible, as hearsay evidence.

The mortgage was *res inter alios,* as well as the note. The only ground on which an argument can be made in support of the testimony, is that they are the declarations of a deceased person, made against his own interest at the time. 1 Greenl. Ev. c. 8, § 147.

They are not entitled to this character. Put it in its strongest light. Suppose it were shown that on the 12th of February, 1827, Cronly had stated that he had, on that day, purchased the property in question from Cronly and wife, had given notes for the purchase-money, and had indemnified the sureties on his notes, by giving a mortgage on the property. Would evidence of Cronly's statements to that effect be admissible? Not unless they were against his interest at the time. Now, can ingenuity

conceive of an interest of Edward Cronly, existing at that time, that could be prejudiced by this admission?

But, in fact, the note and mortgage do not import so much. They are produced themselves. They are not entries, declarations, or statements of any facts. They do not show when they were in fact made or delivered.

It is said in the note of the American edition of Smith's Leading Cases, vol. 2, (197,) 233, that there is no American case which establishes the principle, that admissions by a person against his interest, are evidence after his death. All the cases cited in Greenleaf are English cases.

But whatever the rule, this case is not within it.

The evidence was incompetent for another reason. One question is as to the credit given on the sale. The order of court required a credit of one, two, and three years. The deed of Coursey to Cronly, dated April 30, 1827, recites that the payments fall due February 12, 1828, 1829, 1830, calling them equal annual instalments from the 12th day of instant.

This recital cannot be contradicted. It is an estoppel on all parties. This deed is the only evidence that the sale was made on the required credit. Its recitals are the depository of the evidence on that point. The report of the sale does show the date when it was made. That parties are concluded by recitals in deeds, except in regard to matters of description, &c. 1 Greenl. § 26; Cow. & H., Notes to Phil. Ev., Part 2, 1428.

VII. But if all the charges of the court were correct, and all the evidence competent, still the court ought to have granted a new trial, for the verdict was clearly against the law as expounded by the court, and contrary to the evidence admitted on the trial.

1. At the request of the plaintiff, the court instructed the jury that, if the interest of the children of Elijah Bland in the property, was sold for less than eight thousand dollars, and the dower of the widow was sold with the interest of the children, and valued at one third of the whole, and that the interest of the children was sold for $5,333.33, or any sum less than eight thousand dollars, the sale was void.

This instruction was correct. Yet the fifth and seventh

McComb et ux. *v.* Gilkey.

instructions given for the defendant. are directly in conflict with it. They charge in substance, that if " the lots " sold for eight thousand dollars, it makes no difference, that Mrs. Coursey's dower was included in the sale. The instructions are, at least, apparently so contradictory, as to embarrass and mislead the jury, though the court did not intend to qualify the charge, that the interest of the wards must have been sold for eight thousand dollars, or the sale was void.

Defendant's counsel argue the whole case upon the assumption that the act of the legislature speaks of town lots belonging to the children of Elijah Bland. The absence of any such restrictive words has been commented upon, in connection with the ambiguity and uncertainty of the act. But treating the case as if that qualification was contained in the act, certainly it is the interest of the children that was authorized to be sold. Regarding the order of the orphan's court as having reference to the property embraced in the deed from Coursey to Cronly, it was the interest of the children in that property that was required to be sold for not less than eight thousand dollars.

The terms of the act, and of the order, must be strictly complied with, or the sale is void. *Williamson* v. *Williamson*, 3 S. & M. 747; 1 How. 561; 3 S. & M. 527; 10 Peters, 175; 1 Mass. 488; 15 Mass. 314–330; 4 Kent's Com. 330.

The title of the lessors of the plaintiff was clearly proved, and no question is now, or ever could be made, against it. If the verdict was founded on the idea that the title was not proved, it was clearly contrary to law and evidence.

The questions of law being settled by the court, there were but two issues of fact arising on the defendant's case, submitted to the jury.

The first was, whether the interest of the children was sold for less than eight thousand dollars, and that issue was found in the negative.

The only proof on the point was the deed of Coursey and wife to Cronly, and the report of the sale.

The deed clearly shows that the interest of the children was not sold for eight thousand dollars.

The parties of the first part are John Coursey, guardian, &c.,

and Elizabeth Coursey, wife of said John Coursey.    It recites, that said Elizabeth, as widow of Elijah Bland, is entitled to dower in property ; and that she has married Coursey, whereby he has acquired an interest in the premises.    It sets out the act of the legislature and the order of the court, and then witnesseth, that the said John Coursey and Elizabeth his wife, for and in consideration of eight thousand dollars, to be paid to John Coursey, have granted, &c., all the right, &c., which they, the said John Coursey and Elizabeth his wife, and the heirs of Elizabeth Bland, have as aforesaid, in the property, and contains a covenant of general warranty by Coursey and wife, and by Coursey as guardian.    And concludes, " In witness whereof, the said John Coursey and wife, for themselves, and Coursey as guardian, have set, &c."

This does not import a sale of the interest of the children for eight thousand dollars, and hence is not a compliance with the order of sale.    It does not import a voluntary relinquishment or gift of the dower, without consideration, for the benefit of the children.    It is not a sale of the lots for eight thousand dollars, subject to the dower.    The deed speaks for itself.    It is a bargain and sale of the dower for a valuable consideration, namely, for such a proportion of the whole sum, as the value of the dower bears to the whole value of the fee-simple.    This is the language of the deed, and its legal effect.    An express recital that a part of the purchase-money was for the dower, and the residue for the interest of the children, would not make it plainer.

Had Coursey and wife subsequently given to the children the whole amount realized, that would not cure the vice in the sale. The sale was good or bad.    The order of sale was complied with, or it was not.    If not complied with, the sale was void, and Coursey and wife could not make it good, by subsequently making up the amount required.    But they did not do so. They took the money and kept it.

In the report of the sale, Coursey states the amount, and terms of sale, and the notes taken, and goes on to say " he returns as the property of his wards, two thirds of the land property, and two thirds of the notes arising from the sale of

the tavern and lots. To one third of which real estate, Mrs. Coursey was entitled in right of dower, and by consequence she is entitled to one third of the proceeds of the sale of the tavern and lots. The balance thereof belongs to wards."

Saying nothing of this new mode of estimating the value of a dower, the report shows that the interest of the wards was sold for $5,333.33, and that he sold the dower for $2,666.66, which he claimed and kept as his share of the purchase-money. The terms of the deed show that he sold the dower for the money, and his acts prove that he claimed his full legal right, and more.

The only answer attempted to be given to this argument is, that he took the notes payable to "John Coursey, (guardian, &c.,") and that his subsequent misapplication of the money cannot affect Cronly's title.

The notes were not payable to him as guardian, but if they were, it would not alter the case. The question is one of fact. Did he sell the ward's interest in the lots for eight thousand dollars, or did he sell the dower for part of the eight thousand dollars? It is no matter in what form he took the notes. If he sold the dower for part of the aggregate consideration, he was entitled to be paid for it out of the money when collected. The only misapplication he made of the money, was in taking more of it than he was entitled to.

On this issue, the verdict was clearly contrary to law and evidence. There was no conflict of testimony, no witnesses to be believed or discredited, but a plain fact, clearly made out, and a verdict found in the face of it.

It is due to the excellent circuit judge, to express the conviction, that he overruled the motion for a new trial, mainly in order that the important legal questions involved in the case might at once be settled by this court.

2d. The remaining issue of fact submitted to the jury was, whether the sale was made on the required credit of one, two, and three years.

The deed of Coursey and wife to Cronly, was dated April 30th, 1827, and it recites that the consideration of eight thousand dollars was to be paid " in three equal annual instalments,

commencing from the 12th day of instant, that is to say, $2,666.66, on the 12th of February, 1828," and the like sum on the 12th day of February, 1829, and 1830.

This deed imports a bargain and sale made on the 30th of April, 1827, and as the payments were to be made on the 12th of February, 1828, 1829, and 1830, it is clear that the required credit was not given.

The admissibility of the evidence offered by the defendant to obviate this difficulty, has been discussed.  It remains to consider its effect, if competent.

It was assumed by defendant to prove, either that the deed of Coursey and wife bore a false or erroneous date, or that there was a verbal contract for the sale of the property as early as the 12th of February, 1827.

The court charged the jury that the date of the deed was not conclusive, but they might find that it was made on a different day; and also, that if a contract of sale was entered into on the 12th of February, 1827, that would be a sufficient compliance with the order.

In regard to the date of the deed, the evidence given by the defendant clearly shows that it was actually executed on the day it bears date.  He proved that the date, namely, the words "thirtieth" and "April," in the body of the deed, are in the handwriting of Van Dorn, the judge of probate, who also wrote and took the acknowledgment, which bears the same date. The deed was filed for record the 10th of July following. There must be an end, then, to all suggestion that the date is false or erroneous.   No other proof on that point was offered.

What is the proof to show a contract of sale on the 12th of February, 1827?

1st.  The note of Edward Cronly and others to John Coursey, guardian, bearing that date, for $2,666.66, payable 12th February, 1830.

2d.  The mortgage of Cronly and wife to Cronly and Offutt, his sureties, bearing the same date, on the lots described in Coursey's deed of 30th of April, to indemnify the sureties on the three notes described.

These notes, if they are the same that were afterwards

McComb et ux. *v.* Gilkey.

delivered to Coursey to secure the purchase-money of the lots, seem to have been prepared with a view to the purchase. But are they, coupled with the mortgage, sufficient to warrant the jury in finding the existence of a contract of sale at that date?

There is no proof that they were drawn, or had any existence, at the time of their date. The mortgage, though it bears date the 12th of February, was not executed until the 16th of May following, as is shown by the certificate of acknowledgment. That was after the date of Coursey's deed. And it certainly cannot be presumed that the note, which bears the same date with the mortgage, was made or delivered before Cronly got a title to the land.

*W. S. Wilson* and *J. B. Thrasher*, for appellee.

By an act of the legislature of this State, approved November 28, 1821, (Acts of 1821, page 149,) the guardian or guardians then appointed, or thereafter to be appointed, of the infant children of Elijah Bland, deceased, late of Port Gibson, Claiborne county, were authorized to sell, under such rules and restrictions as the orphans' court of said county should prescribe, three lots of land in that town.

John Coursey was appointed guardian of the infants; and he was directed by the court to sell the three lots in the act named, for no less a sum than $8,000, and on a credit of one, two, and three years. The guardian was required to execute a bond with appropriate conditions, which was done.

Several questions are shown by the record to have arisen on the trial as to the validity of the act itself, and of the order of the court, and the regularity of the guardian's proceedings. Exceptions were also taken to the admission of evidence.

The grounds taken are: 1st. That the statute of 1821, under which the guardian assumed to act, was void for uncertainty, in that it did not ascertain or specify what property was intended to be sold.

2d. The order of the probate court of Claiborne county, prescribing the rules by which the guardian should be governed, and the terms of sale, was also void for the same reason.

15 *

3d. That the order of the court was void for want of notice to the heirs.

4th. That the sale was void, because it was a private, and not a public sale.

5th. That the terms prescribed by the court were not complied with in this : that the property was not sold on a credit of one, two, and three years, and the interest of the wards was not sold for $8,000.

6th. That the court erred in admitting the evidence, which was received in connection with the guardian's deed, that tended to obviate the last two objections.

I. To the first point, that the act of 1821 was void for uncertainty, we reply : That the act upon its face expresses the intention that the guardian of the infant children of Elijah Bland, deceased, should be empowered to sell three lots, the property of his wards, in the town of Port Gibson.

It has been frequently decided, and without doubt correctly, that it is competent for a grantor to convey his estate, lying in a particular county or town, without a more special description thereof; for *id certum est quod certum reddi potest.* Cruise's Dig. tit. Deed, 4 vol. ch. 20, sect. 57, p. 324; 4 Bibb, 288; 11 Johns. 365; 7 Sm. & M. 111.

So here the power was to a guardian to sell lots of his wards lying in a specified town; and it was just as easy to apply the act of the legislature to the objects intended, as if a full and accurate description had been attempted. For however accurate a description, in a deed or other instrument, may be of the person or object intended, evidence *aliunde* must always be resorted to, in order to give it its appropriate application.

Certainly it is an elementary rule, founded in the strongest reason, that, in the interpretation of private grants and contracts, inasmuch as the parties must have intended to accomplish something by them, they shall, if possible, be so construed as to have efficacy *ut res magis valeat quam pereat.* Much more would the court, if it were required to do so, strain to find a meaning for a legislative act, rather than it should be the means of a fraud being committed on society.

McComb et ux. *v.* Gilkey.

Here, however, no strained construction is required. Power was conferred upon a guardian of infants, to sell three lots (their property) in Port Gibson. He has sold three lots; and it was not shown at the trial, nor is it disclosed by the record, that they owned in Port Gibson, when the act was passed, other lots than those named in Coursey's deed. There was, then, no ambiguity patent upon the face of the act, or created by extrinsic proof.

If it had been proved that the wards had other lots in the town, we think it could be successfully shown that the guardian would have had the power to sell three of them at election, even if the act were to be regarded as a private grant, and not as a legislative act to be interpreted by the usual rules, the latter of which it in fact is. 2 Peters, 661, 662.

Upon this point, we refer to Lord Bacon's commentaries upon his famous 25th Rule, that a latent ambiguity may be removed by parol proof. 2 Bacon's Works, 371.

After having stated the distinction between the two kinds of ambiguity, and the rule that a patent ambiguity " is never holpen by averment," and illustrated it by examples, he goes on to say, " but if it be *ambiguitas latens*, it is otherwise ; as if I grant the manor of S. to J. F. and his heirs, here appeareth no ambiguity at all ; but if the truth be, that I have the manors both of South S. and North S., this ambiguity is matter in fact; and therefore it shall be holpen by averment whether of them it was that the party intended should pass.

" So if I set forth my land by quantity, then it shall be supplied by election, and not averment. As if I grant ten acres of wood in sale, where I have an hundred acres, whether I say it in my deed or no, that I grant out of my hundred acres, yet here shall be an election in the grantee, which ten he will take." "And the reason is plain; for the presumption of the law is, where the thing is only nominated by quantity, that the parties had indifferent intentions which should be taken, and there being no cause to help the uncertainty by intention, it shall be holpen by election."

So in the case at bar; had it been shown that the infant wards were the owners of more than three lots in Port Gibson,

then the power would have been given to the guardian to sell three lots out of a greater number.   And in the language of Lord Bacon, the presumption of law would have been " that the parties had indifferent intentions which should be taken ; and there being no cause to help the uncertainty, by intention, it would be holpen by election."

But we repeat that it is unnecessary to invoke the doctrine of election, thus clearly expounded by this illustrious author, because it appears that the infants had three lots which their guardian sold, and it is not shown that they had any more. The maxim, then, being *de non apparentibus et non existentibus, eadem est lex,* no ambiguity has arisen that requires to be removed, either by an " averment of intention," or by " election."

II. If the proposition that the act of the legislature was void for uncertainty, has been successfully met, then it will be very easy to dispose of the further objection that the order of the probate court was void, because it did not ascertain and specify the lots by description.

This objection cannot obtain, for the obvious reason that the order of the court was not the source of the guardian's power to sell.   The act of the legislature, by express terms, *proprio vigore,* conferred the power of sale.   What the court was to do, was a thing entirely collateral, namely, prescribe the terms and restrictions under which the sale should be made.   It could not confer any power upon the guardian, for that the act had already done.   Unable to confer the power, — the guardian having been already invested with it, — it would seem most manifest that the court had no authority to specify what he should sell, or abstain from selling.   By the very terms of the act, it was confined to the simple duty of directing the mode in which a power should be executed that had already been conferred. That duty it has performed.   It did prescribe rules and impose restrictions, by which the guardian was to be governed and restrained in the execution of the power to sell " three lots in Port Gibson, in the act named," which, as has been shown, meant three lots, the property of his wards in that town.

The court must be presumed to have done its duty, and to have acquired the information respecting the property which

could enable it to act advisedly; for every thing is to be presumed to have been rightly done, in the absence of proof to the contrary. Certainly, that tribunal did not regard the act of the legislature as being so incomprehensible an enigma as the plaintiffs in error would now have us believe it to be; for, if we may judge by its order made, it had no difficulty in determining what lots were meant, or in ascertaining their value.

III. It is said the order of the court was void for want of notice to the heirs.

It may here be remarked, that acts similar to that now before the court have heretofore been sustained. 3 Sm. & M. 715; 2 Peters, 627; 16 Ib. 25; 16 Mass. 326.

If the want of notice were available for any purpose, it would more properly apply to the act of the legislature itself, for it was that which gave the power by its direct operation. For this reason, the act of the Rhode Island legislature, in *Wilkinson* v. *Leland,* 2 Peters, was assailed. Story, J., in the opinion, says, that orders for sales of the realty are constantly granted to executors and administrators, both in Massachusetts and Rhode Island, without notice to heirs or devisees. And in the case in 16 Peters, McLean, J., asserts the same to be true of Ohio.

The proceedings in this case were had, under a special act, which gives the law of the case, and the court will not upon considerations of policy or expediency, undertake to annex terms which the law itself did not impose. The act did not require that the guardian should give notice to the wards of his application to the court to perform the duty by the law assigned to it. Upon what principle will the court declare such notice to have been necessary? Indeed, we may ask, of what avail would notice have been to the wards, and for what purpose could it have been required? The court was not called upon to give a decree against them. Under the statute it acted rather in the exercise of discretionary powers, than in the performance of judicial functions. We refer the court to the language of Mr. Justice McLean, in *Watkins* v. *Holman,* 16 Peters, 62: " This is a question of power, and not of policy; and on such a question we cannot test the act by any considerations of

expediency.   Whether the act be open to abuse ; whether it be politic or impolitic, is not a matter now before us; but whether the legislature had power to pass it."

Upon the question of want of notice, the case of *Rice* v. *Parkman*, 16 Mass. 326, is a direct authority.

IV. Again, it is said the sale was a private sale, and therefore void.   That the sale was a private one, is not shown by the record.   If it were shown, similar considerations to those urged in answer to the preceding objection would here apply.   The short answer is, neither the act of the legislature, which was the law of the particular case, or the order of the court, provided that the sale should be made at public auction.   Inasmuch as the guardian was not acting under the general laws, which prescribe certain formalities to be observed in the conduct of such sales, no inference can be drawn from his non-compliance with their provisions against the validity of his acts.

If the general law of the State did not require executors, administrators, and guardians, to make their sales at public auction, would a private sale by them be invalid ?   If so, upon what principle would a court so declare ?   If one of two modes of doing an act may be adopted, and the law is silent as to which shall be preferred, whence would the court derive its power to say that one shall be pursued rather than the other ?

V. The sale is then attacked because, as is alleged, the guardian did not sell his wards' interest for eight thousand dollars, as the court directed.

This objection would seem to be utterly without foundation. The only pretext for it is, that Mrs. Coursey joined in the deed to Cronly, the purchaser, and it was recited that she did so because she was entitled to dower in the property.   The deed expresses the consideration given by the purchaser to have been eight thousand dollars, payable in three annual instalments, to the guardian ; and there is not a word in the deed to justify the inference that any portion of the consideration was to be paid to the widow.   The hypothesis that such was the contract, is utterly overthrown by the evidence :—

1st. By the note of Cronly to Coursey, dated 12th February,

1827, and payable to Coursey, guardian of the infant heirs of E. Bland.

2d. By the mortgage deed of E. Cronly to Louis Cronly, and Fielder Offutt, his sureties, for the payment of the purchase-money, in which he recites three notes to Coursey as guardian, for the three instalments of the purchase-money.

3d. By the inventory of the wards' property, returned to the court by the guardian, and offered in evidence by the lessors of the plaintiffs themselves.

In this inventory the guardian reports the three notes for the purchase-money of the three lots, as the property of his wards.

The sale was made in 1827, and this inventory was filed in 1829, two years afterwards. The notion that Mrs. Coursey was entitled to one third of the proceeds of her dower seems to have entered his mind during this interval. Otherwise, why did he not take the purchaser's note directly to himself or his wife, for her estimated share of the purchase-money?

The question whether the wards' interest was sold for eight thousand dollars, was directly submitted to the jury, and they decided that it was sold for that sum.

VI. Again, it is urged against the sale, that it was not made on a credit of one, two, and three years.

This is inferred from the fact that the guardian's deed on its face bears date of the 30th April, 1827, and recites that the consideration was eight thousand dollars, " to be paid in three equal annual instalments," commencing "from the 12th day of instant."

The evidence offered by defendant, in conjunction with the deed, showed conclusively to the jury that the notes for the purchase-money were made on the 12th February, 1827, and of consequence that the contract of sale was made on that day. This being so, the sale was clearly on a credit of one, two, and three years; for the notes fell due on the 12th days of February of the years 1828, 1829, and 1830.

The evidence offered was: 1st. That the date of the deed, " thirtieth " and "April," were written in a different handwriting

from the body of the deed, and were probably in the handwriting of the probate judge, who took the acknowledgment, thus showing that blanks were left for the date, by the draughtsman who prepared the instrument.

2d. The note of Cronly the purchaser, to Coursey as guardian, on which suit had been brought in the circuit court, which note was dated February 12, 1827, and corresponded precisely in amount, and as to the time of its maturity, with the description of the third instalment in the guardian's deed.

3d. The mortgage from E. Cronly to Louis Cronly and Offutt, on the very lots conveyed by the guardian, dated 12th February, 1827, which recited that Cronly had given " to John Coursey, guardian of the infant heirs of Elijah Bland, deceased, his three bills single or writings obligatory, each for the sum of $2,666.66, bearing date 12th February, 1827; and payable on the 12th days of February, 1828, 1829, and 1830.

4th. The testimony of the probate clerk, which excluded the idea that Cronly was indebted to the guardian on any other account than for the purchase-money of the three lots.

5th. It was shown that all the parties to the transaction were dead, so that explanation from living witnesses having been impossible, resort was necessarily had to proof of the surrounding circumstances.

Which evidence, it is submitted, was abundantly sufficient to establish that the words in Coursey's deed, " commencing with the 12th day of instant," meant the day of the writing of the deed, and that day was the 12th February, 1827.

And further, it proved one of two things, either of which was sufficient for the purposes of the case, —

First.   That the deed was in fact executed on the 12th February, 1827, with blanks left for the date, which were filled up on the 30th April, 1827, the day of the acknowledgment, or else, —

Secondly.   That the contract was entered into, and reduced to writing, on the 12th February, 1827; and not finally consummated, by the giving of a deed, until 30th April thereafter.

It matters not which of these hypotheses be true; for either

being true, the sale was shown to have been made on a credit of one; two, and three years. And that it was so made, the jury, whose province it was, have found.

Lastly. As to the admissibility of the evidence offered by the defendant, in connection with the deed, to show a compliance with the terms which the court prescribed, what this evidence was, has been above recited. It has already been remarked, that it was offered with either of two views —

1st. To show that the deed was in fact executed on a day anterior to that named in the deed, as the day of the date, or

2d. To show that the contract was in truth entered into on the 12th February, 1827, and the purchaser's bonds given for the purchase-money, at one, two, and three years, although the deed may not have been executed until a subsequent day.

First. That it is competent to show by parol proof, that a deed or other instrument was executed on a day different from that named, will certainly not at this day be disputed. Inasmuch as the time at which a contract is made, forms no part of the contract, the admission of such evidence in no sense violates the rule that parol evidence cannot be allowed to vary or add to a written contract.

Phillips, Evidence, vol. 2, p. 359, says : " The delivery of a deed may be proved to have been either before or after the day when it purports to have been made; the date being considered a formal part, only, and not the essence of the deed. In an action of debt, on a bond bearing date on a certain day, the plaintiff may declare on a bond bearing date on a certain day, and prove the delivery on another day; or may state in his pleading that the deed was made and concluded on a different day from that on which the deed itself professes to have been made." See, also, Cowen & Hill's note, 292, to this passage, p. 588 of 3d edition, by Van Cott, and the American cases there cited. Again, Starkie, Ev., 4th part, 1046, 1047, " Evidence is admissible to prove that a deed was executed or a bill of exchange made, at a time different from the date."

" And even in case of records which are conclusive, as far as regards their substance, averments and proofs may be received to contradict them, as to time and place, and many other pra-

ticulars." Chitty on Bills, 581, 8th edition, gives the form of declaring on a bill or note, dated by mistake. Authorities on this point might be almost indefinitely multiplied.

Secondly. The evidence was equally admissible to show, that the notes of the purchaser were made on the 12th of February, 1827, if the deed was made on the 30th April ensuing.

The recital in the deed is, that the consideration money was " to be paid in three equal annual instalments, commencing from the 12th day of instant."

1st. There was no estoppel to the proof by defendant. Because,

First. It is not directly alleged in the deed, that the sale was on a credit of one, two, and three years, from the 30th April, 1827, or from the 12th day of that month, and " estoppels must be certain to every intent ;" and "if a thing be not directly and precisely alleged, it shall be no estoppel." 2 Smith's Leading Cases, 514 ; Coke, Lit. 352 b.

Secondly. " Estoppels ought to be mutual." Same authorities. The lessors of the plaintiff were not estopped by the deed, they not having been parties to it, or in privity with those who were, nor are the other parties. See, directly to the point, *Stevenson's Heirs* v. *Mc Creary*, 12 S. & M. 57 ; 3 Starkie, Ev. 1053, and case of *Green* v. *Weston*, there cited from Sayer's Rep.

Thirdly. " Estoppel against estoppel, sets the matter at large." Same authorities. Here the recital in the deed is of three equal annual instalments, which they could not have been, had the credit been given from the 12th or 30th April, 1827.

2d. If, as has been shown, it be competent to aver and prove, in a direct suit upon a written instrument, that the date is mistaken, it would seem to be equally competent to aver, and prove the same thing, when the written instrument is recited in another deed, and there is a mistake in the recital of the date.

3d. The doctrine of the conclusive effect of recitals in deeds, does not apply to that which is mere description in the deed, and not an essential averment. 1 Greenleaf, Ev. 32, 33, and note, showing that recital of payment of consideration money

in a deed, is not conclusive. Same book, pages 336, 337. So 4 Cruise, Dig. 317, § 24, that a misdescription of a lease, in a grant of the reversion, does not vitiate ; and a misrecital of the estate of the grantor in the land, or of the date of the deed by which he acquired the land does not invalidate the deed. Lord Coke, 1 ·Inst. 352 b., says that a recital does not conclude, because it is no direct affirmation.

4th. Evidence may always be received, to apply an instrument to its subject-matter. 1 Greenleaf, Ev. 337, § 286.

If, upon thus applying the instrument, it appears that in relation to the " subject," the description is true in part, and false in part, the rule is, *falsa demonstratio non nocet,* the false part of the description will be rejected. Now, in the case at bar, the deed undertook to recite and describe the promises of Cronly, the vendee, to pay the purchase-money as part of its " subject." For the author last quoted says, in note 6 to the section cited, that the term " subject," includes every thing to which the instrument relates.

Upon every principle, it was competent to apply the instrument to its " subject," and to reject any part of the description that might be false, if such should be found.

The application was made, and the description in the deed was found to. tally precisely with the actual promises of the purchaser to pay the instalments, except as regards the date.

Was it not competent to make the application ? And does not the case come clearly within the rule, *falsa demonstratio non nocet ?*

There remain to be noticed the specific objections made to the testimony offered. There were two : —

First. To the bill single, given by Cronly to Coursey, as guardian.

Secondly. To the mortgage from the vendee, Edward Cronly, to Louis Cronly and F. Offutt.

The first was clearly competent evidence, because the very question to be determined, was whether Cronly's promises to pay the purchase-money were made in April, 1827, or on the 12th of February preceding. Surely, it must have been com-

petent to produce to the jury the very thing about whose "nature and qualities" the question was.

The testimony, thus considered, was not obnoxious to the objection of being *res inter alios acta*. 1 Greenleaf, Ev. 116, § 100.

The second piece of evidence, the mortgage, was also admissible. Cronly, the mortgagor, was proved to be dead, and the mortgage was received, under the familiar rule, that declarations and entries, made by persons since deceased, against their interest, are competent testimony. 1 Greenleaf, Ev. 180, c. 8, and numerous cases cited. And the entry is held to have the effect of proving other statements, contained in the same entry, and connected with it. Ibid. 186, § 152.

That the declarations and admissions contained in the mortgage, were against the interest of Edward Cronly, the purchaser from Coursey, there can, it would seem, be no doubt.

First. Because he admits distinctly, that he had given to John Coursey, guardian of the infant heirs of Elijah Bland, deceased, his three bills single, for $2,666.66 each; which being an admission of indebtedness, was in law as strong an admission against his interest, as he could possibly have made. And, —

Secondly. The mortgage deed contains a covenant of general warranty of the title to the three lots conveyed, which was also against the grantor's interest.

In no point of view, as we think, could Cronly have been interested, to have given this mortgage, as was urged by plaintiffs at the trial.

Mr. Justice HANDY delivered the opinion of the court.

This was an action of ejectment in the circuit court of Claiborne county, to recover possession of a lot of ground in the town of Port Gibson.

The wife of the lessor of the plaintiff claimed title to the premises as the heir at law of Elijah Bland.

The defendant claimed title from the same source, and in order to show that the title of Bland and his heirs at law had been divested, offered in evidence an act of the legislature of

this State, passed in November, 1821, entitled "An Act to author-ize the guardians of the infant children of Armstrong Ellis, Elijah Bland, and Francis Nailor, to sell real estate," in the following words, —

"Section 2. Be it further enacted, that the guardian or guar-dians now appointed or hereafter to be appointed, of the infant children of Elijah Bland, be and they are hereby authorized to sell, under such rules and restrictions as the orphans' court of said county of Claiborne shall prescribe, three lots of land in said town of Port Gibson.

"Section 3. And be it further enacted, that the said guardian, or guardians of said infant children of the said Ellis and the said Bland, be and they are hereby vested with full power to execute title or titles, in fee-simple, to the purchaser or pur-chasers of said land and lot or lots."

The 5th section provides, that the guardian of the infant children of Bland should, before selling the lots, enter into bond with security, payable to the judge of the orphans' court, in such sum as he should direct, conditioned that the guardian would "apply the proceeds arising from said sale to the pay-ment of the debts of the said Bland, so far as it should be neces-sary," and that the balance, if any, should be vested in such property for the said heirs, as said judge should direct.

A guardian was appointed in January, 1827, by the orphans' court and gave bond in compliance with the act, and at the same time, an order was made by that court, directing John Coursey, the guardian, to "sell the three lots in Port Gibson, in the said act named, on a credit of one, two, and three years, provided that he dispose of the same for a sum not less than eight thousand dollars."

The defendant then offered in evidence a deed from John Coursey, guardian of the heirs of Bland, and Elizabeth Coursey, his wife, who was the widow of Bland, reciting the act of the legislature and the order of court above mentioned, and, "in consideration of the sum of eight thousand dollars, to be paid to John Coursey, in three equal annual instalments, commenc-ing from the 12th day of instant," due on the 12th of February, 1828, 1829, and 1830, respectively, conveying to Edward Cronly

16*

all the right and title of John Coursey and Elizabeth his wife, and the minor heirs of Bland, to three described lots in the town of Port Gibson. This deed bore date 30th April, 1827, and the defendant offered evidence to show that the sale was made on the 12th February, 1827; which will be noticed hereafter.

During the progress of the trial, several questions arose upon the admission of evidence and upon instructions granted and refused by the court; all of which, as well as the action of the court in overruling the plaintiff's motion for a new trial, are assigned for error.

We will proceed to consider these several questions.

The first position taken by the plaintiff is, that the act of 1821 was void; 1st, because there was no estate in court and no guardian in existence at the time of its passage to justify the legislature in granting the power to make the sale, and 2d, because the act is void for uncertainty in not specifying the property to be sold.

Upon the first point, it is not denied that the legislature had the power to authorize the guardian, if there had been one, to sell the lands; but it is said that, when there was no estate in court and no person having the lawful custody of the estate, upon whom the power could be conferred, the legislature was incompetent to act upon the subject. This argument seems to proceed upon the idea that the power of the legislature in such cases is restricted in the same manner as the jurisdiction of courts, and that there must be in existence a party, having custody of the property, before the power can be granted. But this is not true. The powers of the legislature are much more ample than those appertaining to the courts. They are both creative and administrative, and are not confined in their exercise to the rules applicable to tribunals merely judicial. Upon proper representation and due proof made to the satisfaction of the legislature, that it was necessary to the interest of the heirs that the land should be sold, it was as fully within their power to authorize the sale to be made by a guardian to be thereafter appointed by the court having the general power to make the appointment, as by one already appointed. The substantial

McComb et ux. *v.* Gilkey.

thing done was to authorize the sale, and that power might have been granted by the legislature to any one, even to the infants themselves.    The guardian was certainly the most proper person to exercise it; and if there was no guardian, it was altogether proper and competent for the legislature to provide that the power should be exercised by such person, when he should be appointed by the court to which such appointments are generally committed.    *Rice* v. *Parkman,* 16 Mass. 326; *Williamson* v. *Williamson,* 3 S. & M. 715–746.

As to the want of certainty in designating the lots to be sold, the power conferred is general, " to sell three lots of land in the town of Port Gibson."    It is said that under this indefinite power, the lots of any other person might as well have been sold as those belonging to the children of Bland.    But by necessary implication, the power must be referred to the lots belonging to those children.    And if the lots sold did not belong to them, they have no right to complain of the sale, because they are not injured by it.    But if they did own the lands sold, is the power conferred by the act and the sale made under it, sufficient to convey the title?    Assuming that the act had reference to the lots belonging to Bland's heirs, it appears that the guardian sold " three lots of land in the town of Port Gibson." This comes within the words of the power.    If it did not appear that the heirs owned any other lots in the town of Port Gibson than those sold, the grant would be sufficiently certain, for it could be rendered certain by location.    4 Cruise's Dig. ch. 20, § 56.    But the evidence goes to show that there were more than three lots belonging to them in the town of Port Gibson ; and this presents the question whether the doctrine of election is applicable to the case.

Without expressing an opinion as to the very doubtful question whether the right of election would have passed under the terms used in this act if they had been employed in a grant or deed made by Bland in relation to the property, we are of opinion that a more liberal rule of interpretation should be applied to the act of the legislature than to an individual grant or deed. The act was intended for the benefit of the heirs of Bland, and that object would have been wholly defeated by giving to the

McComb et ux. *v.* Gilkey.

act any other construction than that it conferred the right upon the guardian to elect which three of the lots in the town of Port Gibson he would sell. It is conceded by the counsel for the plaintiff in error, that the right of election exists where it clearly appears that such must have been the intention in making the grant; and it appears to be clear that when the benefit intended to be derived by the grantor or other party for whose use the grant is made, would be defeated unless the right of election be conferred, it must be presumed that it was intended to confer it. Because the legislature must have intended the act to be effectual in furtherance of its object, and not nugatory; and it could only be effectual by giving the right of election.

The second objection insisted upon is, that the order of sale by the orphans' court was void for uncertainty in specifying " the three lots in the town of Port Gibson, in the said act named," and because no notice of the proceeding was given to the heirs.

The power to sell was given to the guardian by the act of the legislature, and he was also vested with the right of electing which three lots he would sell, as is above shown. The order of the orphans' court very properly did not attempt to interfere with the power thus conferred, but confined itself to what it was required to do by the act, only prescribing the rules and restrictions under which the guardian should sell " the three lots " which he was empowered to sell by the act.

As to notice to the heirs, we do not think it was necessary in the orphans' court. The act of the legislature had already in effect ordered the sale of the property ; and all the rest to be done was merely ministerial. That act must be presumed to have been passed by due and proper representation of the heirs, so that the execution of the power thereby conferred cannot be considered as depriving the heirs of their property without due course of law, in the sense of the 10th section of the 1st article of our constitution. The whole proceeding was for their benefit, and must be presumed to have been at their instance. The act does not in terms require notice, and we can see no useful object that could have been accomplished by giving them notice, even if the legal presumption did not exist that, as it was a proceeding for their benefit, the action of the orphans'

court was taken at their instance upon proper representation. *Rice* v. *Parkman*, 16 Mass. 326; *Watkins* v. *Holman*, 16 Peters, 62.

Another ground of error assigned is, that the court refused to instruct the jury that the sale by the guardian being private, and not a public sale to the highest bidder, was void.

Both the statute conferring the power to sell, and the order of court carrying it out, are silent as to the manner of making the sale. That appears to have been left to the discretion of the guardian under the sanction of the orphans' court, and it cannot be brought within the operation of general laws regulating sales by guardians, administrators, &c., because it is a special power, and it is to be presumed that if the legislature had intended to bring it within general rules as to sales under the authority of the orphans' court, it would have been stated in the act.

Again, it is objected that the court erred in instructing the jury that if they believed the legal title to the land in controversy to be outstanding in another person than the plaintiff's lessor, they should find for the defendant. This was correct. The evidence tended to show a sale of the property by the guardian to Louis Cronly, and if that sale was properly made, it was sufficient to bar the plaintiff's recovery in this action, though the defendant might not deduce a regular title from Cronly.

The next objection is, that the court erred in admitting in evidence a bill single, executed by Edward Cronly and others, dated 12th February, 1827, for $2,666.66, due 12th February, 1830, which was proved to have been found among the papers in the Claiborne circuit court, in a suit brought by the payee, John Coursey, against the makers; also a mortgage executed by Cronly, dated 12th February, 1827, to indemnify his sureties on the above-mentioned bill single, and two others of like import, which were stated in the mortgage to be each dated 12th February, 1827, and each for $2,666.66, payable to John Coursey, on the 12th February, 1828, 1829, and 1830, respectively.

This evidence was offered by the defendant below to obviate an objection made by the plaintiff to the admission of the deed

executed by Coursey, the guardian, to Cronly, the purchaser, which deed bore date the 30th April, 1827, and recited that the purchase-money was eight thousand dollars, "to be paid in three equal annual instalments," "commencing from the 12th day of instant," (30th April, 1827,) but further recited that the three instalments were due and payable on. the 12th February, 1828, 1829, and 1830, respectively.   It was objected that it thus appeared by the deed, that the property was not sold on a credit of one, two, and three years, in conformity to the order of sale of the orphans' court.   The bill single and mortgage were offered in evidence for the purpose of showing that, although the deed bore date 30th April, 1827, yet that the property was really sold on the 12th February, 1827.   For the purpose of explanation, and in connection with the same point, the defendant proved that the deed was in the handwriting of one Davis, who was dead, except the words "thirtieth" and "April," in the date in the handwriting of Vandorn, the judge who took the acknowledgment; and that Edward Cronly was dead, and further that there was no order in the records of the probate court authorizing Coursey, guardian of the heirs of Bland, to sell any property except the order above mentioned under which this property was sold.

The first question arising under this objection is, whether it was competent to show that the deed was executed on a different date from that stated in it, and on which it was acknowledged.   It is clear that such evidence was competent.   3 Stark. Ev. 4th Am. ed. 1846.   Secondly, was the defendant estopped by the recital in the deed that the instalments of the purchase-money "commenced on the 12th of instant."   This point would seem to be settled by the question just stated ; for if a deed may be shown to have been executed at a different date from that appearing on its face, it follows that a recital in it having reference to the date would necessarily be varied.

: But in order to create an estoppel by recital in a deed, the matter must be directly and precisely alleged, and with certainty to every intent.   Coke, Litt. (Butler & Harg.) 352, b ; 2 Smith's Lead. Cas. 514 and 536, Am. ed.   If it be repugnant and contradictory, it can be no estoppel.   Here the recital is that the

purchase-money, eight thousand dollars, was "to be paid in three equal annual instalments, commencing from the 12th day of instant, that is to say, $2,666.66 on the 12th February, 1828, $2,666.66 on the 12th February, 1829, and $2,666.66 on the 12th February, 1830." Inasmuch as it is impossible that the instalments could be annual, that is to say, on a credit of one, two, and three years, (which is the ordinary understanding of that term,) when they began to run in April, 1827, and became due in February, 1828, 1829, and 1830, it is plain that such a recital cannot be conclusive of the fact stated. It is manifest that there was a mistake which should have been explained.

But it is insisted that the bill single was incompetent, because it did not show that the deed bore an improper date. The true matter of inquiry was, what was the date of the sale, and whether it was made on a credit of one, two, and three years, in conformity to the order of the orphans' court. The recital in the deed tended to show to the contrary, and thereby to invalidate the sale. Hence the introduction of the note, as tending to show that the deed was drawn up anterior to the day it bore date, and with reference to the date at which the sale was actually made. The evidence was clearly competent for this purpose, because it was the obligation given by the purchaser, as the circumstances tended to show, for the lots in controversy sold by Coursey, and under the circumstances of the case must be considered as evidence of the date of the sale.

The mortgage was also competent evidence to the same point, and is not liable to the objection of being *res inter alios acta.* It was admissible upon the principle of being a written declaration or entry made by a person since deceased, against his interest. 1 Greenl. Ev. § 147. That it was against his interest is manifest from the fact that he thereby acknowledges his indebtedness to John Coursey, guardian, for the sum of eight thousand dollars, on three specified bills single, and conveys his property to the mortgagees, his sureties, to indemnify them for their liability for him. This mortgage was also a security to Coursey, in the event of non-payment of the debt to him, and that it should become necessary to resort to it.

This was clearly against the interest of Cronly, and brings this evidence within the rule.

The last ground of objection is, that the court erred in over-ruling the motion for a new trial, because the verdict was con-trary to the instructions of the court and the evidence in the case.

The fourth instruction given at the instance of the plaintiff is as follows: " If the jury believe, from the evidence, that the interest of the children of Elijah Bland in the property sold by John Coursey to Edward Cronly, under color of said order of sale, was sold for less than eight thousand dollars, and that the dower interest of the widow of Elijah Bland in said property was sold together with the interest of said children, and valued at one third of the whole, and that the interest of said children was sold for the sum of $5,333.33, or any other sum less than eight thousand dollars, then such sale was and is void."

At the instance of the defendant the court gave the following instructions: —

" 5th. The fact that Mrs. Coursey joined in the deed convey-ing any interest she may have had, did not vitiate the sale, if the guardian sold the lots for eight thousand dollars.

" 7th. If John Coursey sold the three lots in his deed to Cronly described, for eight thousand dollars, and took the pur-chaser's notes for the purchase-money, payable to himself as guardian, any misapplication made by him of the proceeds of the sale could not affect Cronly's title."

At the first view there is an apparent conflict between these instructions given at the defendant's instance and that given in behalf of the plaintiff. But upon closer examination there appears to be no repugnance between them. The first declares in substance that if the interest of the children in the lots was sold for less than eight thousand dollars, whereby they did not realize the price for which the guardian was required to sell the property, the sale was void. The other instructions declare that the fact of Mrs. Coursey, the widow of Bland, joining in the deed, did not vitiate the sale, if made for eight thousand dollars; and if the guardian made the sale for that sum, and took the purchaser's notes, payable to himself as guardian, the

sale was valid, though he might misapply the purchase-money. The question was then fairly submitted to the jury, whether the sale in behalf of the children's interest was made for less than eight thousand dollars, with the additional instruction that if the guardian took the purchaser's notes for that amount, payable to him as guardian, that was evidence that the children's interest was sold for the sum required, and that his misapplication of the money could not affect the purchaser's title. We consider this a correct view of the law, and as presenting the point involved justly and fairly for the consideration of the jury. And the verdict settled the point of fact that the children's interest in the lots was sold for the sum of eight thousand dollars.

Let us see whether this view of the matter is unwarranted by the evidence, so that the verdict should not stand.

The first piece of evidence touching this point, is the deed from John Coursey, as guardian, and Elizabeth his wife, which recites that said Elizabeth was and is entitled to dower in the lots, whereby John Coursey had also acquired an interest therein ; that the premises had been ordered to be sold by the orphans' court, in virtue of the act of the legislature. It then conveys for the consideration of eight thousand dollars, to be paid to John Coursey, in three equal annual instalments, all the right and title of Coursey and wife, and of the heirs of Bland, to the premises.

It is said that this deed does not purport to be a relinquishment or gift of the dower interest in the property, and that that must be considered to be a constituent part of the purchase-money, to which Coursey and wife were entitled. We cannot agree with this view. The deed purports to be made under the authority of the act of the legislature, and of the order of court, which contemplated the sale of the interest of the heirs only. By the order of court the guardian was only authorized to sell that interest, upon the condition that it brought the sum of eight thousand dollars. He cannot be heard to say that he violated his authority, and that the sale was void; and if there be any state of facts to be deduced from his interest in, or connection with, the property, which could justify his action and

McComb et ux. *v.* Gilkey.

render the sale valid, it will be presumed. Such a justification is found in the fact that he and his wife surrendered their interest in the property for the benefit of the children. And although this is not expressly stated in the deed, there is nothing which negatives it, and it will be presumed, because otherwise the sale and conveyance would be void and in violation of his duty, against which every reasonable presumption will be indulged.

This presumption is strengthened by the evidence showing that the three. bills single for the purchase-money were made payable to him as guardian, — a fact entirely irreconcilable with the idea that the sale was not made wholly for the benefit of the children, unless indeed he intended to commit a fraud upon his trust, by appropriating to his own use a part of the money for which he had taken notes appearing on their face to belong to his wards. And this presumption, of course, cannot be indulged.

But it is said that his inventory of the property of his wards shows that they were entitled to but two thirds of the money for which the lots were sold. This inventory was made and returned in February, 1829, about two years after the sale and the date of the notes for the purchase-money. Giving to its statements the meaning contended for by the counsel for the plaintiff in error, we do not think that it can be regarded, under the circumstances of the case, but as an effort to misapply the proceeds of the sale. Having made the sale for the benefit of his wards, and taken securities for the purchase-money, payable to himself as their guardian, he would not have been heard to deny that the proceeds of the sale belonged to them, nor permitted to vary his accountability by any subsequent return made by him to the court, especially by one which, if admitted, would vacate the entire sale. Much less will he be permitted by his subsequent acts, to divest the rights of a *bonâ fide* purchaser.

The other views urged by counsel to show that the verdict was not supported by the evidence, have already been considered in what we have said in reference to the note for the purchase-money and the mortgage given by Cronly. Being of opinion.

that this evidence was admissible to show the date of the sale, it was, of course, proper to be considered by the jury; and, taking all the evidence together, we think that it was sufficient to sustain the verdict.

Upon consideration of the whole case, we think that the judgment is correct, and it is therefore affirmed.