DANIEL BOON, Plaintiff in Error, *v.* WILLIAM H. BOWERS et al., Defendants in Error.

1. LEGISLATURE: POWER OF.—The legislature of this state, has the constitutional power to enact a private statute, authorizing a guardian appointed in Ohio, to sell the lands of his wards in this state, either at public or private sale, and to prescribe as a condition precedent to the exercise of such power, that the guardian shall execute a bond according to the laws of Ohio, for the faithful application of the proceeds of the sale, with such sureties and conditions and in such penalty, as a judge of the Court of Common Pleas of Ohio may approve and direct. See *Williamson* v. *Williamson*, 3 S. & M. 744.
2. STARE DECISIS.—All questions, having an important bearing upon titles to property, which have been carefully considered and solemnly settled by this court, ought to be treated as no longer open for future review and investigation, unless the evil resulting from the principle so established, is greater than the mischief to the community could possibly be from a disregard of the former adjudication.
3. COURT: ACT OF IS ACT OF THE JUDGE.—When the law requires a certain duty to be performed by the judge of a court, composed only of one judge, it is sufficient if the duty be performed by the court, since the act of the court is necessarily the act of the judge.

IN error from the Circuit Court of De Soto county. Hon. P. T. Scruggs, judge.

William H. Bowers, Victoria D. Bowers, and Mary W. Bowers,

(the two last suing by their next friend, W. H. Bowers,) on the 27th of April, A. D. 1854, filed in the court below their complaint against Daniel Boon, under the New Pleading Act of 1850, by which they sought to recover certain lands therein mentioned, and of which they alleged they were the legal owners, and entitled to possession, but that defendant has possession, and illegally withholds the same from them. The defendant Boon appeared and pleaded the general issue. Verdict and judgment were rendered for the plaintiffs.

From the bill of exceptions taken during the progress of the trial, it appeared that the defendant offered in evidence in support of his title, a private act of the legislature of this state, passed on 22d February, 1848, (see pamphlet Act of 1848, p. 261,) which provided in substance as follows : That Israel Dille, the guardian of plaintiff, appointed by the Court of Common Pleas of the county of Licking, in the State of Ohio, should be authorized to sell the land in controversy, with other lands belonging to plaintiffs, either at private or public sale, in his discretion ; but if at private sale, then for not less than three-fourths of the valuation, which might be assessed under oath by two freeholders, to be appointed by the probate judge of De Soto county. That before he should be authorized to make titles, said Dille, for the purpose of securing the faithful application of the proceeds of the sale to the benefit of plaintiffs, should execute a bond, in such penalty and with such condition, and with such sureties, as the judge of the Court of Common Pleas of Licking county, Ohio, should direct and approve. Plaintiff also offered in evidence, in support of his title, two deeds, made by Dille to him, conveying the land in controversy, under a contract made in pursuance and by virtue of the provisions of said private act; also the transcript of the record of the Court of Common Pleas of Licking county, Ohio, by which it appeared that he had executed a bond in the penalty of twelve hundred dollars; which was approved by said court.

The condition of the bond, after reciting the appointment of Dille, as guardian for plaintiffs, was as follows :—" That if the said Israel Dille shall discharge with fidelity the trust reposed in him, and shall render an accurate statement of his transactions, with a

just account of the profits arising and accruing from the personal estate of his said wards, and shall deliver up the same when thereunto required, and account for the proceeds of all land sold by him, under a special law of the State of Mississippi, then, &c." This bond was dated 17th March, 1850.

The first deed made by Dille to defendant and offered in evidence, was dated 29th December, 1848, and the other, dated 13th of March, 1855, both conveying the land in controversy. To the introduction of all which the plaintiff objected, for the following reasons :—

1. Because the act of the legislature was unconstitutional.

2. Because the third section of the act was unconstitutional.

3. Because the judge of the Court of Common Pleas, and not the court itself, was impowered to take and approve the bond.

4. Because the bond was not conditioned as the act required. The Circuit Court sustained the objections, so far as said private act, bond, deed, &c., were evidence of title in defendant, but admitted them to show color of title, for the purpose of enabling defendant to set up his claim for improvements. The defendant excepted to the opinion of the court.

It is unnecessary under the opinion of this court, to notice the other proceedings in the court below. Boon sued out this writ of error.

*Clapp* and *Strickland*, for plaintiff in error.

The first point to be decided by this court is, as to the constitutionality of the act of 1848, authorizing Dille to sell the lands.

This question has already been settled by this court, in the case of *Williamson and Wife* v. *Williamson*, 3 S. & M. 733, which was one almost identical with the present. If the decision of the court in that case was correct, then the act authorizing Dille to sell was constitutional, and we deem it a work of supererogation to argue the point. The case of *Jonas* v. *Perry*, 10 Yerg. 59, which was reviewed in *Williamson and Wife* v. *Williamson*, and which is the strongest case upon the other side, does not apply to this case. The ground upon which the special act of the Tennessee legislature was held to be unconstitutional, was, that it was rather

a *judicial* than a *legislative* act, inasmuch as it adjudicated upon the indebtedness of the decedent, and authorized his administrator to sell the real estate for the purpose of paying their debts; and in that very case the court admits, that the legislature has the power to pass a special act, authorizing the conversion of real into personal estate, and *e converso*. This is all that was done in the act in controversy in this case, and therefore it is constitutional, even according to the principle settled in *Jones* v. *Perry*.

2. The next point is, that the third section of said act was unconstitutional, because it did not require Dille to re-invest the proceeds of the sale of said lands.

In the case of *Williamson and Wife* v. *Williamson*, the act required the party to give bond, conditioned, amongst other things, to re-invest the proceeds of the property authorized to be sold; and the court in that case held the bond to be fatally defective, because this requirement of the act had not been complied with; but it did not undertake to say, that the absence of such a provision would have made the act unconstitutional. This is a novel, and as it appears to us, a frivolous objection, and we cannot suppose for a moment, that either the absence or presence of such a provision would in any manner affect the constitutionality of the act.

3. The third objection is, that the bond of Dille was not executed in conformity with the third section of the act, inasmuch as the act required the bond to be presented and approved by the probate *judge* of the Court of Common Pleas of Licking county; whereas the record shows that this was done by the *court*.

We are aware of the strictness required in proceedings under these special acts, and that any *material* departure from the requirements of the law vitiates the proceeding: but at the same time the cases show that such a departure must be *material*, and calculated to prejudice the interests of the parties for whom the act was passed. This may be seen in the case of *Williamson and Wife* v. *Williamson*. The only question then, is, was there a *material* deviation from the requirements of the act in this instance, or were the spirit and intention of the act *substantially* complied with? The conditions of Dille's bond were prescribed, and the bond was *in fact*, approved by *the judge* of the Court of

Common Pleas of Licking county, because, without the approval of the judge, there could have been no approval of the court. Does the fact that the judge gave his act a more solemn form, by performing it *in court*, invalidate the act, or defeat or impair the end intended to be secured by the law of Mississippi?

It is further objected, that the penalty of Dille's bond was too small. The third section of the act referred to, required the bond to be executed in such penalty, and with such conditions, as the judge of the Court of Common Pleas of Licking county should prescribe. If our last position be tenable, that the approval of the judge *in court* was equivalent to his approval *out of court*, then, as he was to be the judge of the amount of the penalty, the objection amounts to nothing.

If the case of *Williamson and Wife* v. *Williamson*, 3 S. & M. 733, is not reversed, we submit that the court below having erred in excluding the private act of the legislature of 1848, above referred to, from the jury, the judgment must upon this ground, if upon no other, be reversed.

*Watson* and *Craft*, for defendants in error.

1. The special act of the legislature, conferring upon Dille the power to sell the land, was unconstitutional.

In making a general objection to this kind of legislation, as being an unconstitutional invasion by the legislative branch of the government, of the jurisdiction conferred exclusively upon the judicial department, we are met by the decision of this court, made in the case of *Williamson et ux.* v. *Williamson et al.*, 3 S. & M. 715.

The question seems, in that case, to have been maturely considered, and the whole argument against the constitutionality of such legislation, was certainly exhausted by the able counsel in their reported briefs. Knowing it to be the inclination of courts, "to repose upon the sanctity of former decisions," we do not now urge the abstract objection to all special legislation; nor, if the facts of this case were such as to bring it within the case of *Williamson* v. *Williamson*, would we be disposed to raise the constitutional objection at all. We ask the attention of the court, however, to the opinion in *Williamson* v. *Williamson*, and the reason-

ing upon which it proceeds, as we rely upon it as a strong argument in our favor, in view of the different state of facts which we present, and the striking difference in the provisions of the special act which we are considering.

In this connection we will embrace the consideration of our second ground of objection to the evidence, viz :—

2. The third section of the act under which the sale to defendant's vendor was made, was unconstitutional.

In *Williamson* v. *Williamson*, an administrator, duly qualified as such in a Probate Court (or Orphans' Court,) of this state, was authorized to sell certain realty belonging to his intestate's estate, upon these terms and conditions :—

" That the said Belfield Wren, upon entering into bond with sufficient security, to be approved by the Orphans' Court or chief justice thereof, of said county of Warren, payable to the said chief justice, and his successors, in office, in such sum as the said court or chief justice deem sufficient, conditioned that he observe the rules and directions of law for the sale of real estate by administrators, and that he will well and truly account for the proceeds of said sale; and that such proceeds shall be invested in such other property as the said administrator shall deem most for the interest of said widow and orphan, jointly"—may proceed to sell, &c.

In the opinion of the court, it is said, (and it is upon this reasoning, mainly, that the act is held to be constitutional,) that—

" The legislature might have enacted a general law, authorizing every administrator to do that which, by this act, this administrator was impowered to do.    No constitutional objection would exist to such a law.    Indeed, one with provisions in substance nearly identical, has been passed, and no constitutional objections have been urged against it."    H. & H. 418.

Passing by the very grave objections to this general law here referred to, so far as it invests administrators with power over realty, when not necessary to pay debts, objections which, though they may not " have been urged against it," have suggested themselves, nevertheless, to the minds of the profession, we see that the act of special legislation, considered in the case of *Williamson* v. *Williamson*, was sustained, mainly because it was identical in

Boon *v.* Bowers et al.

its principal features with a general law, which was the law of the land. What would have been the decision, had that act been not only not analogous to, but in direct contravention of, the general law? In the case of *Williamson* v. *Williamson*, the legislature undertook to trench no further upon the judicial department of the government, than to decide that it was a case to which the general law was applicable, leaving all other matters to be controlled by the Probate Court, which had constitutional jurisdiction thereof, in accordance with the provisions and requirements of "the law of the land."

Mark the different aspect which this case presents. Israel Dille, at whose instance the act was passed, had qualified as guardian of the plaintiffs, in Licking county, Ohio. In Mississippi, such guardianship could not be recognized, and he stood before the legislature as a stranger to plaintiffs; unless he could bring himself (which is not pretended,) under the designation of one "interested" in the lands of the estate of William H. Bowers, deceased. Under such circumstances, the probate courts of this state could not have entertained his petition for a sale of the land in controversy, for they could only exercise the power vested in them, over the estates of minors, according to the forms of law. Had the legislature, then, the power to do, by a special act, what could not have been done under any general law? Could it, without notice to plaintiffs, or any consent on their part, violate or repeal, as to them, the general law, under the protection of which they held their property in this state? Even conceding, that if there had been no general law applicable to the subject; and further, that the constitutional investiture of the Probate Court "with jurisdiction in all matters testamentary, and of administration, in orphans' business and the allotment of dower," (Cons. art. 4, § 18,) did not preclude the legislature from all action in the matter; the question still arises, was it competent to deprive the plaintiffs of the benefit of those safeguards which the general law throws about the property of minors, and prescribe a mode in which they should be divested of their rights, without the intervention of any of those forms which the laws of the state made necessary to effect a similar end in the case of all other minors?

The legislature has the power to repeal its own acts, but not to violate them.

And these remarks apply with still more force to the third section of this act, which confers upon the judge of the Court of Common Pleas of Licking county, Ohio, the power of prescribing the condition and penalty of the bond to be given, and adopts the laws of Ohio, as the standard by which the sufficiency of the bond is to be determined.

Under the laws of our state then in force, no minor could be deprived of his real estate, upon the suggestion that his interest required or would be promoted by it, except upon condition of the petitioner's giving bond, to be approved by the Probate Court, conditioned to apply the proceeds in the same way the land itself would have been applied, or descended. How could the legislature subject the land of plaintiffs, then, to the operation of the laws of Ohio?

We do not deem it necessary to enlarge upon this point. We earnestly request, in its adjudication, a careful investigation by the court, of *Williamson* v. *Williamson*, and the cases there referred to. It will be seen that there is an apparent diversity of decision; but in every instance in which it has been held that such an act of special legislation was constitutional, the decision has been made upon some feature peculiar to the case; such as identity with some general law in force, as in *Williamson* v. *Williamson*, and *Williams* v. *Norris*, 12 Wheat. 129; or because it was passed to subject realty to the payment of debts, in preference to personalty, in the absence of a general law for that purpose, as in *Watkins* v. *Holman*, 16 Peters, 26, and *Wilkinson* v. *Leland*, 2 Ib. 627; or where the thing to be done was not provided for by any general law, nor, by the constitution, embraced specifically within the jurisdiction of any department of the goverment, but was nevertheless right and proper, as in *Rice* v. *Parkman*, 16 Mass. 331.

In this case, we submit that there is nothing to break the force of the reasoning by which the Supreme Court of Tennessee, in *Jones* v. *Perry*, 10 Yerg. 59, arrived at the conclusion that the act there considered was unconstitutional, and nothing to prevent this

court from reaching the same conclusion. This, indeed, is a much stronger case for the plaintiffs than was the case of *Jones* v. *Perry.* It presents the same unconstitutional infringement by the legislature, of the province of the judiciary; is violative of the clause of our bill of rights, which provides, that no one shall "be deprived of his property but by due course of law"—the "law of the land;" and, in addition to all this, is in direct conflict with general laws in force at the time of its passage, which were fully adequate to the exigency for which it was intended to provide, and to the protection of which, plaintiffs, in common with all minors upon whom realty in this state had descended, were entitled.

But if the act, under which defendant derived his title, shall be considered constitutional, the evidence was properly excluded from the jury, because—

3. The power to take the bond was not conferred upon the *Court* of Common Pleas of Licking county, Ohio, but upon the *judge* of that court, as an individual.

The bond was in fact taken, however, as appeared from the record, by the court, as a court, and made a matter of record. If it was a power conferred upon the *judge*, as an individual, this action of the court was a nullity. *Smith* v. *Craig*, 10 S. & M. 447.

4. The bond was not such as the act required.

The language of the third section of the act which relates to the bond, is:—

"That the said Dille, shall account faithfully with the said widow and heirs, for the proceeds of said lands, and shall, before he executes any deed of conveyance for any of said lands, execute a bond, according to the laws of Ohio, in such penalty and with such conditions as shall be prescribed by the judge of the Court of Common Pleas of the county of Licking, in said state, to secure his accountability for all moneys received for said lands."

This section of the law certainly contemplated that the penalty of the bond should be sufficiently large to cover the entire proceeds of the sales; and in the language of the act, "to secure his accountability for *all* moneys received for said lands."

The report of the appraisers in the record, shows that this land

was appraised at $1674; and Dille was prohibited by the act from selling it for less than three quarters of the appraisement. Surely the bond which he executed, in the penalty of $1200, did not fulfil the requirement of the law, to secure his accountability for all the lands.

Besides, the bond given is expressly conditioned not only to account for money received from the sales of these lands, but for any personal property which might come to his hands as guardian. It seems indeed to have been the only bond executed by him as guardian, in Ohio. The penalty of $1200 might be exhausted in accounting for other property, and so no security whatever for the proceeds of the lands be left.

FISHER, J., delivered the opinion of the court.

This was an action brought under the Pleading Act of 1850, by the plaintiffs below, as heirs at law of one William H. Bowers, deceased, in the Circuit Court of De Soto county, to recover a tract of land in the possession of the defendant.

The questions for consideration, arise out of the action of the court below, rejecting the evidence introduced by the defendant for the purpose of establishing his title to the land in controversy. It appears that at the January session, 1848, of the legislature of this state, a special act was passed authorizing one Israel Dille, who had qualified as guardian of the plaintiffs in the proper court of the State of Ohio, to sell the lands of the said Bowers, situate in the county of De Soto: that he proceeded in virtue of the powers thus conferred upon him to make the sale, when the defendant became the purchaser. The third section of the act provides as follows: " that the said Israel Dille, shall account faithfully to the widow and heirs of the deceased, for the proceeds of the sales of said lands, and shall, before he executes any deed of conveyance for any of said lands, execute a bond according to the laws of Ohio *in such penalty,* and with such conditions, as shall be prescribed by the judge of the Court of Common Pleas of the county of Licking in said state, to secure his accountability for all moneys received for said lands."

It further appears that Dille, the guardian, executed a bond

which was approved by the Court of Common Pleas of Licking county, Ohio, in the penalty of twelve hundred dollars, with condition to apply the proceeds of the sales of said lands, according to the provisions of the above named act of the legislature.

The questions which come up for consideration upon the foregoing statement of facts, will be noticed in the order in which they have been discussed by counsel.

An elaborate argument has been made, with a view of showing that the statute is unconstitutional, on the ground that the subject-matter of legislation belongs to the judicial, and not to the legislative department of the government. Perhaps, if this were now an open question in this court, we would feel bound to yield to the force of the argument and authorities cited by the counsel of the defendant in error. We do not, however, intend to intimate an opinion in this respect. This court, after much consideration, and a careful examination of the authorities relating to the subject, sustained an act of the legislature passed in 1821, in most of its provisions similar to the one now under consideration. The question is one solely of legislative power, and not of expediency. The question of power, we regard as firmly settled by the well considered opinion in the case of *Williamson et ux.* v. *Williamson et al.*, 3 S. & M. 744. Every consideration of policy admonishes us, even if we believed that there was room to doubt as to the correctness of the decision in that case, not to enter upon a review of  it, nor to disturb it at this late day. All questions which have an important bearing upon titles to property, and which have, as in this instance, been once carefully considered, and solemnly settled by this court, ought not to be treated as open for future investigation, unless it shall appear that the evil resulting from the principle established, must be productive of greater mischief to the community, than can possibly ensue from disregarding the previous adjudications upon the subject. This ought to be the inflexible rule by which a court of last resort should be guided, with reference to all questions which may be reasonably supposed to arise between parties in consummating a contract for the sale or purchase of real estate. The party proposing to sell, may be supposed to exhibit either his title to the land, or his authority, if acting in

Boon *v.* Bowers et al.

the capacity of agent, to make the sale.   The purchaser, to judge
of either, must look to the law as it exists at the time.   The point
for his consideration is, whether the party proposing to sell is
clothed with legal authority to make the sale.   The special act of
the legislature is produced, and the question thereupon arises, had
the legislature power to enact the law?   The decision of this court
is examined, and the question of power, after mature deliberation,
decided, and determined to be within the pale of legislation.   It
is indeed not venturing too far, to presume that the party petition-
ing for the enactment of the law, the legislature in enacting it,
and the party purchasing in virtue of the power thus conferred, all
acted with reference to the law as settled by the decision which
we are now asked to overrule.   We see nothing in the case to
justify us in departing from the rule as settled by the former ad-
judication, and we therefore hold, that the law is not in conflict
with the constitution.

It is next insisted, that the third section of the act required
the judge of the Court of Common Pleas of Licking county, Ohio,
to take and approve the bond, and that the law has not been com-
plied with in this particular, because the bond was taken and ap-
proved by the court, and not by the judge as an *individual.*   We
are unable to perceive the force of this objection.   Where a court
is composed of only one judge, as in this instance, we are unable
to comprehend why the act of the court is not at the same time
the act of the judge.   The law contemplated that the judge should
act in his official, and not in his individual capacity.   To suppose
the latter, would be doing violence to all legal presumptions.   Offi-
cers who act under oath, and with a due sense of their official re-
sponsibility, are presumed to perform their duty faithfully, in re-
gard to all matters within the scope of their authority.   To agree
with counsel, we must reverse this rule, and hold that private in-
dividuals who do not act under these solemnities are presumed to
do right, and officers are presumed to do wrong.

It is again objected, that the bond is not in a sufficient penalty,
and that the condition is not such as is required by law.   In re-
gard to both of these matters the judge is by the third section of
the law clothed with a discretion.   The purchaser of the land had

VOL. I.—17

nothing to do with either the penalty or condition of the bond. He could only know whether a bond in a penalty, and with a condition prescribed by the proper officer, had been given.    This has been done.

The other points discussed by counsel, do not, under the view which we have taken of the case, require consideration.

Judgment reversed, and a *venire de novo* awarded.

An elaborate petition for a re-argument was filed, but refused.