## J. G. SAXON et al. v. M. F. AMES et al.

1. CHANCERY AND PROBATE COURTS.—The chancery courts established by the present constitution of Mississippi are substitutes for the chancery and probate courts which existed under the constitution of 1832, and succeed to all the equity cognizance of the one and to all the probate cognizance of the other, as they existed under the old constitution, the amendments thereto and the statutes.

2. MATTERS OF PROBATE IN CHANCERY—PRACTICE.—Probate law is not administered in the chancery courts according to ordinary chancery practice, but according to the formula laid down in the statutes for probate business. Wells v. Smith, 44 Miss. 304.

3. PARTIES—INFANTS—SERVICE OF PROCESS—CHANCERY AND PROBATE PRACTICE.— The cases of Ingersoll v. Ingersoll, 42 Miss. 155 ; Price v. Crone, 44 Miss. 570; Wells v. Smith, 44 Miss. 304, and others cited as illustrating the distinctions to be observed, as to who are proper defendants, and how they are to be served where infants are concerned, between a court of equity, *per se,* and the same court exerting its probate jurisdiction.

4. Partition—hotch-pot.—Upon ordering a partition of lands, pending adminis-
tration, and where it does not yet appear that exact justice cannot be done to all the
heirs and distributees on final settlement of the administration, it would be premature
and erroneous for the court, in anticipation of mere possible inequalities, to consider all
the advances previously made to the heirs with a view to hotch-pot.

Appeal from the Chancery court of Oktibbeha
county. Pollard, Chancellor.

The opinion states the case sufficiently.

*T. J. & F. A. R. Wharton,* for appellants.

*James T. Harrison* and *Wiley N. Nash,* for appellees.

Simrall, J. :

Proceedings were instituted in the probate court, by
the petitioners, a portion of the heirs of John Hollins-
head, deceased, for the partition of the real estate de-
scended. Associated with these heirs in the petition, were
persons who had purchased at bankrupt sale, the undi-
vided interest of two of the heirs. The remedy, particu-
larly defining the mode of conducting such a suit, is given
by article 117 of the Code of 1857, p. 454. The court
made a decree of partition, appointing therein com-
missioners to carry it out. It is objected, and mainly
relied upon for error by the appellants, that there was
not a legal service of citation upon a minor heir.

The statute regulates the mode of exercising this juris-
diction, declaring in what manner notice shall be given
to the parties in interest; the notice as actually given
must be brought into comparison with the law. The
last clause of article 117 is, " the devisees or heirs or the
guardians of such as are under age, shall be first sum-
moned," etc., etc. The petition prayed that a summons
may issue for the minor and his guardian. The guardian
voluntarily appeared, and by answer admitted that it
would be for the interest of the ward, that partition

should be made. The statute does not require the ward to be summoned, but assumes that his rights will be sufficiently represented by the presence of his guardian. The office of the summons is to give notice to the guardian, that he may appear ; if he waives the process, or comes voluntarily, he and the ward he represents are as completely amenable to the jurisdiction, as if brought *in invitum.*" In proceedings in the probate court, or under the probate court law, the guardian is the person usually designated to defend for his ward. Indeed, he is a necessary party, if there be such a fiduciary, in all proceedings affecting his interest. Thus, by general words, the 32d article of probate court law denounces nullity and inconclusiveness of all judgments and decrees, if there be a guardian, resident in this state, unless the guardian be first served with notice." Under articles 98, 99, pp. 448, 449, the form relating to proceedings for sale of lands, where personal estate is insolvent, and the latter to a total insolvency, if there be a minor heir, " the process must be served on the guardian ;" so in applications for allotment of dower. Art. 173, p. 469.

This suit is governed by the statutes, as contained in the revision of 1857, except so far as repealed and altered by the act establishing the chancery courts, approved May 4, 1870. Pamphlet Acts, p. 54. The 27th section of this act continues in force all laws, 1st Dec., 1865, relating to the probate courts, not repealed by this act, nor inconsistent with the constitution, " so far as consistent with the chancery courts established by the act." The third section defines generally the jurisdiction of the court, in the words used in the constitution creating the court and defining its cognizance.

The chancery courts are substitutes for both the chancery and probate courts, under the judicial system lately displaced, succeeding to all the equity cognizance of the former, and to all the probate cognizance of the

latter, as granted by the constitution of 1832, the amendments thereto, and the statutes.

As a chancery court, it conducts and administers the probate law—not in the forms and according to the practice and machinery that a court of equity adopts in the exercise of its ordinary equitable powers, but according to the formula laid down in the statutes for the transaction of probate business. "All the laws and parts of laws, relating in any manner to the probate courts, in force in December, 1869," were operative when this suit was begun, and proceedings had, with the exception already quoted. The 27th section makes the same declaration with regard to the chancery court law. Article 17, of the Code of 1857, under which this petition was made, is in none of its features inconsistent with the statute of 1870, or the constitution. It follows, therefore, that it was proper to conduct this suit in all respects in conformity to that article. In Wells v. Smith, 44 Miss. 304, the application was to sell lands to pay the debts of the deceased. The objection was, that the chancery court passed the decree before the expiration of five months allowed by the chancery practice to take testimony. We held, however, that, in such suits, "the chancery court could license the sale, on the same terms and in the same manner that the probate court were heretofore authorized to do. In a subsequent case, it was distinctly stated that, in the grant of administration, proof of wills, settlement of accounts of fiduciaries, sale of property of decedents, and in all other matters of like character, the chancery court exerted its powers by the same modes and forms as did the probate court. It could not have been the design of the convention and of the legislature to retard the administration of estates and orphans' business by clogging the action of administrators, executors and guardians with the delays that are necessary in ordinary suits in equity.

The requirement of article 117, of the Code of 1857, was met by giving notice to the guardian, to bring him in to defend for his ward.   His appearance and answer accomplished the object.   Pollock v. Buie, 43 Miss. 151.

There is a nice distinction, as to who are proper defendants and as to the notice to them, when infants are concerned, between a court of equity and the chancery court exerting its probate jurisdiction.   The cases of Ingersoll v. Ingersoll, 42 Miss. 155, and Price v. Crone, 44 ib. 570, illustrate how the infant must be brought in as defendant in the ordinary equity suit.   Wells v. Smith, 44 Miss. *supra* ; McLendon, Adm'r v. Winston et al. 43 ib. 254, are instances of the latter.   In the former, the infant must be personally served, and the father or mother, etc.   Under the probate court law, as we have seen, generally it suffices to serve the guardians.

After the order had been made for partition, and before the commissioner's report was confirmed, some of the parties who joined in the original petition as plaintiffs, together with the minor defendant thereto who had not attained majority, presented an original petition, setting up summary objections; chief of which were, that the minor heir had not had legal notice ; and, secondly, that advancements were made by the intestate, in his lifetime, and since his death, to the several heirs, of unequal amounts, which ought to have been brought into hotch-pot on this partition.   Schedules of such advancements are made exhibits.   It is not alleged what was advanced by the intestate, nor whether the inequality was occasioned by a distribution made by the administrator.   The estate has not been finally settled.   It is not alleged that the administrator has not assets enough remaining to equalize any inequality, such as is complained of.   The exhibits show that nearly all the property that came to the several heirs were slaves; and the inequality grows out of the unequal value of the several shares.   It is impossible that

there can now be made a common fund by returning to it what has been received. Exact justice may be done each party on final settlement of the administrator. It is admitted that he has enongh to meet all debts. It is not said that, if the parties are not paid out of the lands, they have no other resource.

The petition may be considered as reasons for not confirming the report. The allegations are so vague and equivocal, connected with the fact that some of the parties who united in it joined in the original petition, preferring no such claim, and for other reasons already referred to, we think the chancellor did right in over-ruling it and confirming the report.

*Decree affirmed.*