CHARLES J. BURRUS ET AL. *v.* JAMES H. BURRUS, EXECUTOR.

1. PROBATE COURT. *Process. How regulated.*
   The chapter on "Probate Court," in the Code of 1857, contained all of the statutory provisions in reference to the issuance, execution, and return of the process of that court, and all questions in relation thereto should be determined by the provisions of that chapter alone. The provisions of that Code in regard to the issuance, execution, and return of the process of Circuit Courts had no application to the process of Probate Courts.

2. SAME. *Its proceedings entirely statutory.*
   The Probate Court was a peculiar court, which did not proceed according to the regulations of the common law, but was regulated by statute, and chap. 60 of the Code of 1857 contained a complete system for the exercise of its jurisdiction and powers, independent of the provisions with reference to other courts, except in so far as some other provision may have been made applicable, in express terms, to the Probate Court.

3. SAME. *Process. Return thereon.*
   The return of a sheriff of "Summoned," or "Executed," on process of the Probate Courts, was a sufficient return to meet the requirements of the Code of 1857. The case of *Mundy et al.* v. *Calvert et al.*, 40 Miss. 181, overruled.

4. SAME. *Process. Return showing manner of service.*
   But where a sheriff, in attempting to comply with the requirements of the Circuit Court law, in showing how he had executed a summons from the Probate Court, made a return which showed that he had not properly executed it, the court could not proceed as if the writ had been properly served, notwithstanding the sheriff's return contained the word "executed," in connection with other words showing the manner of the service.

5. SAME. *Appointment of guardian ad litem. Without process for minor.*
   Under the Code of 1857, it was not a prerequisite to the power of the Probate Court to appoint a guardian *ad litem* that the minor should first be cited, but that court could make such appointment without any process for the minor, and, after the filing of the minor's answer by his guardian *ad litem* thus

appointed, could proceed to render a valid decree affecting the interests of the minor. *McAllister* v. *Moye*, 30 Miss. 258, overruled. CHALMERS, J., dissented.

6. SAME. *Process for guardian. Infant never summoned.*

In all proceedings in the Probate Court, affecting the rights or interests of an infant, it was necessary, under the Code of 1857, that his guardian should be summoned, if he had one; and if his guardian was adversely interested, or failed to appear, then that a guardian *ad litem* be appointed for him. It was not required, in any case, that the infant should be summoned; but it was required that he should have a guardian in court to represent him. CHALMERS, J., dissented.

7. SAME. *Right to appoint guardians. Notice to infants.*

It is the right and duty of the State to assume the guardianship of the persons and estates of infants within its jurisdiction, and in discharging this duty it has the right to delegate to its courts the power to appoint for an infant a general guardian, or a guardian *ad hoc*, to stand in the place and stead of the infant, and appear for him in court with the same effect as the attorney of one *sui juris* may appear for him. And in the delegation of such authority, the State, by statute, may require process to be issued to the infant for whom a guardian is to be appointed, or may dispense with such process. CHALMERS, J., dissented.

8. GUARDIAN AD LITEM. *His powers. Right to appoint.*

A guardian *ad litem*, under our statute, is a full representative of the rights and interests of the minor, for the particular case in which he is appointed, and he is clothed with as full and perfect authority for that suit as the general guardian has for all the duties incident to his office. And it was as competent for the Legislature to provide for a special guardian, in certain circumstances, as for a general guardian in all other cases.

APPEAL from the Probate Court of Yazoo County.

Hon. R. B. MAYES, Judge.

In August, 1867, the Probate Court of Yazoo County rendered a decree declaring the estate of James R. Burrus, deceased, insolvent, and authorizing the executor to sell the lands of the decedent to pay his debts. From that decree the heirs of Burrus took an appeal, in October, 1877. The other facts necessary to be stated will be found in the opinion of the court.

*R. Bowman*, for the appellants.

1. The sheriff's return shows that the summons was not properly served on the appellants. There is no law for executing process by simply reading it. The return should

show that a true copy was delivered. *York* v. *Crawford*, 42 Miss. 508; *Rankin* v. *Dulaney*, 43 Miss. 197. If a defendant cannot be found, the sheriff must so declare in his return. *Hammond* v. *Olive*, 44 Miss. 543; *Mullen* v. *Sparks*, 43 Miss. 120; *Ford* v. *Coleman*, 41 Miss. 651.

2. The Code of 1857 required process to be served on an infant personally. Rev. Code 1857, p. 489; *Ingersoll* v. *Ingersoll*, 42 Miss. 162.

3. A decree of the Probate Court on process returned "Executed" is not valid. *Miller* v. *Palmer*, 55 Miss. 323.

*Harris & George*, for the appellee.

1. Under the Code of 1857, the service of process in proceedings in the Probate Court was governed by the provisions contained in the chapter on "Probate Court." The statutes prescribing the mode of service of the process of Circuit Courts had no application to the process of Probate Courts.

2. The Code of 1857, which provided a system of Probate Court law complete in every particular, nowhere directed service on an infant. That law required, in proceedings where an infant was concerned, that his general guardian should be served with process, if he had one; but if he had no guardian, or his guardian was adversely interested, or failed to appear, then that the court should appoint a guardian *ad litem* to represent the infant. But in no case was it necessary to serve the infant with process. That would have been merely an idle ceremony. See *Winston* v. *McLendon*, 43 Miss. 254; *Smith* v. *Wells*, 43 Miss. 293. The conclusion reached in *McAllister* v. *Moye*, 30 Miss. 258, was not correct.

*J. H. Holt*, on the same side.

CAMPBELL, J., delivered the opinion of the court.

The only error assigned is "the insufficiency of service of process" on plaintiffs in error; as heirs and devisees of the testator, to answer the petition of his executor to the Probate Court to order a sale of his real estate and declare the estate insolvent. A citation for the heirs and devisees was issued,

and the return of the sheriff is, "Executed August 21, 1867, by reading the within citation to [naming four of the parties] ; on James R. Burrus, by leaving a true copy of within citation at his place of abode, with a free white person over the age of sixteen years, he being absent from home." All these heirs were minors. A guardian *ad litem* was appointed for them, who filed their answer in common form, and a decree of sale was made in accordance with the prayer of the petition. One of the petitioners was the guardian of the devisees and heirs of the testator, as stated in the petition.

This case is to be determined by the Code of 1857, in force in 1867, when these proceedings were had. Since the decision of *Mundy et al.* v. *Calvert et al.*, 40 Miss. 181, it has been accepted as true that, under the Code of 1857, the return of process from the Probate Court by the sheriff must conform to the requirements of the Circuit Court law, in showing *how* the officer had executed it.

In *Merritt* v. *White*, 37 Miss. 438, it had been held that a general return of "Executed," on original process from the Circuit Court, was not good ; and in *Robertson* v. *Johnson*, 40 Miss. 500, the same rule was declared as to process from the Chancery Courts,— a conclusion justified, perhaps, by art. 27, p. 544, Rev. Code of 1857, which declares that all process of any Chancery Court shall be executed in the same manner as writs of the like nature from the Circuit Courts are required to be executed. No provision required process from Probate Courts to be executed or returned according to the requirement of the law for the process of Circuit Courts, and nothing in the Code of 1857 suggests such a thing. On the contrary, art. 20, p. 428, gives the Probate Court power to issue a summons for any person, etc., and provides, where it is "necessary or proper to enforce the appearance of the party, the court on the return of 'Summoned,' and failure to appear, may issue an attachment," and art. 21, p. 429, provides how all process of the Probate Courts shall be served. The Code of 1857 con-

tains a complete system for the exercise of the jurisdiction and powers of the Probate Courts. Provision is made by art. 16, p. 428, for the sheriff to "execute and return" all process emanating from the court, while arts. 20 and 21 regulate the issuance and service of process in all cases in the Probate Court. There is no allusion anywhere to the Circuit or Chancery Court law in reference to process, but the chapter on "Probate Court" contains all that pertained to that court, and left no occasion to resort for any purpose to other chapters for information as to the issuance, execution, and return of process of that court. It would seem to result from this, that the sufficiency of the service and return of all process of the Probate Court should be determined alone by reference to the provisions of the Probate Court law, and that the announcement in *Mundy et al.* v. *Calvert et al., supra,* finds no sufficient support in the statutes, and indeed the opinion in that case does not indicate that the statutes were examined on this question ; and in no subsequent case has the subject been *considered.*

The ruling in *Mundy et al.* v. *Calvert et al., supra,* is that a general return of "Executed," on process of the Probate Courts, is not sufficient, and that the rule prescribed for the return of the process of Circuit Courts is equally applicable to the Probate Courts. We think this an erroneous view of the Code of 1857, and that under it a general return of "Executed" or "Summoned," without more, is sufficient.

In the case under consideration, the sheriff, in making his return, attempted to comply with the requirement of the Circuit Court law, by showing *how* he had executed the summons, and, in doing this, showed that he had not complied with the directions of the law ; and, therefore, if the appointment of a guardian *ad litem* to represent the infants could not be legally made without summoning them, it was erroneous to proceed to a decree in this case, the infants not having been legally summoned to appear and answer the petition.

If it was unnecessary to summon the infants, but was legal to appoint a guardian *ad litem* for them without summoning them, it was not erroneous to proceed to a decree.

In *McAllister* v. *Moye*, 39 Miss. 258, it was announced, for the first time in this State, that the Probate Court had no jurisdiction to appoint a guardian *ad litem* to represent infants defendant, until after notice to them by service of process or publication.

This case was decided under the act of 1846 (Hutch. Code, 728, sect. 4), which introduced into the Probate Court in this State the legal requirement to appoint guardians *ad litem* for infants.   It was not claimed, in that opinion, that any statute required the service of process upon infants, but that the chancery rule required it, and therefore it should obtain in the Probate Court.   The section of the act of 1846 cited above was substantially adopted in art. 32, p. 431, Code of 1857; but neither it nor any other article of that Code required an infant to be summoned in any proceeding in the Probate Court.   It is the guardian who is to be summoned in all cases where a minor is interested; and if he had no guardian, or the guardian failed to appear, or was personally interested, a guardian *ad litem* was to be appointed.   Art. 32, p. 431; art. 88, p. 446; art. 98, p. 448; art. 106, p. 451; art. 151, p. 463; art. 153, p. 464; art. 173, p. 469.

As stated above, the Code of 1857 contains a complete system of laws for the administration of the duties and powers of the Probate Court, and that is in the chapter on that subject, which is *sui generis*, and independent of the provisions applicable to other courts, except in so far as some other provisions may be made applicable in express terms to the Probate Court.

The issuance and execution and return of all process of this court is regulated by the provisions of this chapter, applicable to it alone (arts. 16, 20, 21); the mode of proceeding against non-resident or absent parties is provided (art. 22); the subject of taking the depositions of witnesses is

regulated by adoption of the law applicable to the Circuit Courts and Chancery Courts (art. 24) ; and there are regulations for the trial of issues by jury (art. 27), and for an appeal to the High Court of Errors and Appeals (art. 28), and for *fieri facias* to enforce a money decree of the court (art. 31). Art. 32 declares the conditions on which the judgments of the Probate Court shall be conclusive on minors, viz. : His guardian, if resident in this State, "shall be first served with process to appear and defend the interests of the minor, and if the guardian be a non-resident of the State, the mode of bringing in non-resident parties shall be observed ; and if any guardian shall fail to appear, after service of notice or publication, or if the guardian should be personally interested, or if there be no guardian, the court shall appoint a guardian *ad litem* to protect the interests of the minor."

In all this there is no requirement that a minor shall, in any case, be cited. In every instance his guardian is to be summoned or cited ; and if he is personally interested, or fails to appear, or if there is no guardian, a guardian *ad litem* was required to be appointed. No statute required the minor to be cited. Why cite him? If cited, and present, he could do nothing ; could not *appear;* could not consent to any thing ; could not appoint an attorney. The court is his protector and the guardian of his interests ; and the statute required the court to appoint a guardian *ad litem,* as a further means of protecting the interests of the minor, in all which the minor must have been passive and could take no part. It is a reasonable assumption that, if it had been intended to require the minor to be cited, before the appointment for him of a guardian *ad litem* by the Probate Court, it would have been so declared in the statute regulating this matter in the Probate Court, as it was expressly declared as to the Chancery Court in art. 52, p. 548. The "Probate Court" law furnished a guide for every step in the exercise of the powers of that court. It is neither necessary nor allowable to resort to the regulations for other courts in determining the practice of the Probate Court, except

where express reference, for convenience, is made in "Probate Court" law to the provisions of law for other courts.

In *Winston et al.* v. *McLendon*, 43 Miss. 254, these views were indicated to some extent, and in *Saxon et al.* v. *Ames et al.*, 47 Miss. 565, the subject was further elucidated. Impressed by the importance of the subject, we have thoroughly investigated and maturely considered it, and announce as our conclusion that it was not a prerequisite to the appointment of a guardian *ad litem*, under the Code of 1857, that the minors should first have been cited, but that the court had the right to appoint a guardian *ad litem* without process, for the minors, and to proceed to a decree after answer of the minors by their guardian *ad litem* thus appointed. Besides the suggestive fact that the Code of 1857, in art. 52, p. 548, of the "Chancery Court" law, requires the minor to be made a party, by process or publication, before the appointment of a guardian *ad litem*, and that the "Probate Court" law does not make this requirement, is the important consideration of the nature of the functions of the Probate Court, and the peculiar situation of minors in their relation to society. The Probate Court had full and exclusive jurisdiction of minors' business, embracing the guardianship of their persons and estates; and infants are regarded as without discretion, and therefore without legal capacity, except to a very limited extent, bounded by necessity. They cannot enter an appearance to a suit, nor appoint an attorney; therefore the duty of the court to appoint a representative for them, to appear and make their defence. A person *sui juris* may appoint an attorney, whose appearance for him supplies the want of process for him, and gives the court jurisdiction over him as if served with process. Why should it be thought strange that the Probate Court, charged with the business of infants and the duty of their protection, should possess the power to appoint a guardian *ad litem* as to any matter affecting the interest of the infant in that court, without citing the infant, who could do nothing if cited and present? This court had power to appoint general guardians

for all the infants in the county under fourteen years of age, without notice, and notice to those over fourteen years of age was necessary only because the statute gave them the right to select guardians, and required notice to them before appointment. The State assumes the guardianship of those classes of society deemed incapable of caring for themselves, and has established a tribunal to extend the care which the State has considered necessary for their interests. It is entirely free from doubt that the State had the right to confer on the Probate Court power to deal with the estates of infants in such way as the State chose to determine. It could, by statute, require process to issue and be served on the infant, or not. It could require a guardian *ad litem* for the infant, or dispense with it, as legislative discretion might conclude. Having charged a court with jurisdiction of the business of infants, as a means of performing the State's duty to this class of citizens, it was the province of the State to declare the rules to be observed by this court in dealing with this business. The Legislature may, by special act, authorize the sale of the land of an infant, without any notice to the infant. *McComb and wife* v. *Gilkey*, 29 Miss. 146. See also *Williamson et ux.* v. *Williamson et al.*, 3 Smed. & M. 715 ; *Boon* v. *Bowers et al.*, 30 Miss. 246. And it may, by general law, delegate to the court established by the Constitution to attend to infants' business the power to deal with their estates, under such safeguards for the protection of their interests as it may prescribe. The appointment of guardians had its origin in the theory that it is the right and duty of the sovereign to take care of all the infants within the realm, and of their affairs, because of their imbecility and want of understanding to act for themselves, and therefore the sovereign, through delegated authority, assumes to manage and control the business of infants. With a concession of the right of the State to assume the guardianship of the affairs of infants must follow a recognition of the right of the State, in discharging this duty, to delegate to its courts the power to appoint for the infant a general guardian, or a guardian *ad hoc*, to stand in

the room and stead of the infant, and appear for him in all courts with the same effect as the attorney of one *sui juris* may appear for him.   This is the theory on which the "Probate Court" law is constructed, as found in the Code of 1857.   It contemplates that an infant shall in all cases be represented, in proceedings in the Probate Court, by his general guardian, and that, if there is no such guardian, or he fails to attend and represent his ward, or if he has an adversary interest, that a guardian *ad litem* shall be appointed, who is the representative of the infant.

In no case is an infant required to be summoned.   In every case his general guardian, if he have one in this State, must be.   He must have a guardian in court to represent him. That cannot be dispensed with without error; but in no case is it necessary to cite an infant before appointing a guardian *ad litem*, because no law requires it.   In Circuit Courts and Chancery Courts the rule is different, made so by practice, and in our Probate Courts by statute.   In those courts no mention is made, in the initiatory proceedings, of the infancy of a defendant, who is proceeded against as an adult, except as changed by statute requiring service of summons on not only the infant, but on his father, mother, or guardian, if he has any in this State.   Those courts proceed according to the practice established without statute, or as regulated by statute.   The Probate Court was a peculiar one, which did not proceed according to the course of the common law, but was regulated by statute; and, as above shown, the statute (Code 1857, p. 489, arts. 63, 64) did not apply to the Probate Court.   It seems surprising that it should ever have been supposed that those articles did apply to the Probate Court. They are found in the chapter on "Circuit Court," under the heading of "Original and Mesne Process:"   The language is applicable to a Circuit Court, and that of art. 63, held in *Mundy* v. *Calvert*, 40 Miss. 181, to be applicable to the Probate Court, is confined in terms to the Circuit Court, as shown by the proviso which speaks of the "clerk of the Circuit

Court,'' and excludes the idea of the process there spoken of being that of any other than the Circuit Court.

It may be the better policy to require service of process on all infants, as a condition precedent to a valid order affecting their interests in the Probate Court, but it is manifest that the Code of 1857 did not require it; and, believing that it was competent for the Legislature to dispense with it, we see no power in the court to require it.

Decree affirmed.

SIMRALL, C. J., concurring:

The utterances of this court have not been, perhaps, uniform and harmonious on the subject of service of process in proceedings instituted under the probate law, as administered under the Code of 1857 in the Probate Court, and under the present Constitution in the Chancery Court.

The confusion has arisen mainly from a failure to observe the different mode by which the court, in probate proceedings, obtains jurisdiction over minors, from that required in the ordinary chancery suit for equitable relief.

Our statutes present the anomaly that the Chancery Court obtains cognizance over an infant and its property, in one class of suits, without personal service on the infant, and in another class of suits it cannot proceed to a decree affecting the infant without service, or constructive service. This grows out of the subjects of its jurisdiction. It has, under the present Constitution, the same jurisdiction that belonged to the Probate and Chancery Court under the Constitution of 1832, and exerts what (for convenience) we call its probate jurisdiction according to the formula of procedure prescribed by the statutes.

The difference was noticed in *Winston* v. *McLendon*, 43 Miss. 257, which was an appeal from the decree of the Probate Court to sell lands of the intestate to pay the debts. The decree was reversed because the court had appointed a guardian *ad litem*, when the record showed that the minor had a

regular legal guardian. It was pointed out by reference to the Code of 1857, art. 98, that the guardian must be served, and defend for his ward. The case of *Mullen* v. *Sparks*, 43 Miss. 129, decided at the same term, was cited as an equity suit, and there the service was as in the Chancery Court law.

In *Mills* v. *Smith*, 44 Miss. 302, 303, it was shown in the petition that the minor had no guardian, and it was said by the court, citing art. 42, p. 31, Code of 1857, that the very case intended by the statute had occurred, for the appointment of a guardian *ad litem*. The decree was affirmed without a hint that the father or mother, as provided in the Chancery Court law, ought to have been summoned. It is true that publication had been made for the infant as a non-resident, but that was not relied upon by the court as an essential matter.

In *Saxon* v. *Ames*, 47 Miss. 566, which was a proceeding under the statute for a sale, if partition of the land could not be made, the reasoning was, that in that special proceeding, as well as in proceedings to sell lands when the personal estate is partially or totally insolvent, under sects. 98, 99, pp. 448, 449, Code of 1857, the entire method was regulated by the Probate Court statutes. The point adjudged was, that inasmuch as the guardian of the minor *appeared* and represented the ward, the requirement of art. 117, Code of 1857, was complied with, and the minor was bound by the decree. The court said : "The distinction is as to who are proper defendants, and as to the notice to them, where infants are concerned, between a court of equity and the Chancery Court exerting its probate jurisdiction. The cases of *Ingersoll* v. *Ingersoll*, 42 Miss. 155, and *Price* v. *Crone*, 44 Miss. 557, illustrate how the infant must be brought in as defendant in the ordinary equity suit. *Wells* v. *Smith*, 44 Miss. 296, and *McLendon* v. *Winston*, 43 Miss. 254, are instances of the latter. * * * *In the former*, the infant must be personally served, and the father, mother, etc. Under the Probate Court law it suffices generally to *serve the guardian*." And it was held that no process or summons was required for the

minor, and would be wholly unnecessary; and further, that if the regular guardian *voluntarily* appears and makes defence, the decree will be obligatory.

In the late case of *Erwin* v. *Carson*, 54 Miss. 282, an ordinary suit in equity, — it was held that it must appear in the record that there was no father, mother, or guardian in this State; otherwise, jurisdiction was not obtained over the minor. Courts of equity always required subpœnas to be served on infant defendants. The service prescribed by the Chancery Court law, on father, mother, etc., is superadded.

The authorities which I have cited announce emphatically that the acquisition of jurisdiction in probate proceedings, over a minor and his property, is regulated by the special statutes applicable to them, and not by statutes referring to process and service on infant defendants to a suit in equity. The regularly appointed guardian is the representative of the ward in probate proceedings, and in no state of case is the minor directed to be personally served. By art. 104, p. 451, Code 1857, on final settlement by an executor or administrator, summons shall be served on the guardian of an infant legatee or distributee; and if there be no guardian, the court shall appoint a *guardian ad litem*.

So, under art. 151, p. 463, Code of 1857, where the guardian applies to sell land of his ward, notice must be given to co-heirs and three of the nearest relatives of the ward, if there be any in this State.

In neither of these cases, nor any other in the probate law, is there direction to summon the minor. But in every case the appearance and defence must be by the regular guardian, or the special guardian *quo ad hoc*.

Publication may be made to a non-resident guardian. That, I suppose, applies to a guardian who has been appointed in this State, and who is amenable to its courts as such. Such non-resident guardians are expressly contemplated and provided for by arts. 160 and 161, p. 466.

If there be no guardian, resident or non-resident, then the court shall appoint a special guardian *pro hoc vice*, who shall defend for the infant; and such defence, for all the purposes of that proceeding, is as conclusive on the infant as if made by a regularly appointed legal guardian.

The statute esteems this temporary guardian, with duties limited to the particular suit, as a full and complete representative of the rights and interests of the minor. He stands before the court clothed with authority by the law, as full and perfect for that suit as the general guardian is for all the duties incident to his office. He supplies the incapacity of his temporary ward, and does for him what he could not do for himself.

It was as competent for the Legislature to provide for a special guardian in certain circumstances, to represent the infant, as for the general guardian in all others. The necessity for either rests upon the *legal* incapacity of the minor; and it was within legislative discretion to indicate some fit person who shall stand before the court as the representative and defender of the infant's rights.

Perhaps there are cases in this court where attention was not directed to the subject here discussed, and the judgment might be in conflict with the conclusions reached in this case. In *Miller* v. *Palmer*, 55 Miss. 323, it seemed to be conceded by counsel that the probate sale was void, and the opinion of the court assumes that as conceded.

CHALMERS, J., dissenting.

The opinion of the majority of the court makes all proceedings in the Probate Court *ex parte* in so far as they affect the rights of minors. If the minors have guardians, their guardians are to be summoned, unless they be personally interested. If they have no guardians, or their guardians are personally interested, then there is service of process upon nobody, — save, perhaps, upon that man of straw, a guardian *ad litem.* It follows that, whether the proceeding be to sell the minor's own

land, or to condemn that of his father; whether it be to render a judgment *in personam* against him on final settlement of his guardian's account, or upon that of his father's adminis- trator; whether it be to sweep away his own property, or to strip him of all interest in that of his parents, he is never entitled to personal notice. I entertain the gravest doubts whether a system of laws which sanctions such results is not so violative of common right as to be absolutely null and void. I doubt whether a sale of property under proceedings so con- ducted would confer title.

I feel quite certain that our Probate Court system has not been generally considered, from the adoption of the Code of 1857 to the present day, as being wholly *ex parte* as to infants. It is true that nowhere in the Probate Court chapter is there any allusion to serving process upon a minor. It is always with reference to service upon the guardian, and never with reference to the minor, that the law speaks; but it is equally true that the same thing characterized the act of 1846 (Hutch. Code, 728); and yet two years before the adoption of the Code of 1857, in the case of *McAllister* v. *Moye*, 30 Miss. 258, the High Court of Errors and Appeals had declared void a sale of land in which a minor was interested, because he was not personally served. With this construction affixed on the act of 1846, it was substantially reënacted in the Code of 1857. I do not think I can be mistaken in saying that from that time to the present it has been generally, if not univer- sally, considered as necessary to cite an infant whenever, in the Probate Court, his property was to be sold, and to regard as defective all titles where this had not been done. Even if the decision in *McAllister* v. *Moye* was originally wrong (which I do not admit), I regard it as unwise at this day to over- turn it.

I have said that nowhere in the Probate Court law was there any provision for citing the minor, and that the law required the guardian only to be summoned, if there was one, and if not, there was no requirement in express terms for citing

any body. Notwithstanding this omission, the courts wisely, as I think, have construed the statute as requiring the guardian to be summoned, for the purpose of affording cumulative protection to the infant because of his tender years and inexperience ; but not as dispensing with that necessity to notify him in person which exists in all courts and under all systems, where a citizen is sought to be deprived of his property by judicial proceedings. Upon this principle it was held, that though the statute regulating the apprenticing of freedmen contained no requirement that the proposed apprentice should be notified, the proceeding would be utterly void if he was not. *Jack* v. *Thompson*, 41 Miss. 49. This was upon the ground that a person, though a minor, could not be deprived of his rights without due process of law, in some manner served upon him. I am unable to see why the same reasoning does not apply to rights of property as well as those of person.

So, also, in *Brown* v. *Levee Commissioners*, 50 Miss. 468, laws which undertake to perfect tax-titles by proceedings in chancery were declared unconstitutional because they failed to provide for the service of process upon the defaulting owner ; and this, too, notwithstanding the argument was earnestly pressed that it was purely a proceeding *in rem*, and in aid of the public revenue. This seems to me a most conclusive authority against the opinion of the majority of the court.

I concur in so much of the opinion of the court as announces that the Probate Court chapter constitutes a complete system in itself, and that resort should be had to no other chapter, either as regulating the service of process or for any other purpose. I think this is demonstrable from an inspection of the chapter, and that it is demonstrated in the opinion of my associate, Judge Campbell.

I dissent from that portion of the opinion which declares that no notice to the minor is necessary, for these reasons : *First*, I doubt the constitutionality of such a system of laws. *Second*, The High Court of Errors and Appeals have construed

the act of 1846 as requiring notice to the minor, and two years thereafter the Legislature embodied that act, without change in that regard, in the Code of 1857. *Third,* I believe that no good, and perhaps great harm, may come from overturning the long practice that has grown up under that construction.